Peelle, Ch. J.,
delivered the opinion of the court:
The claimant, a skilled machinist and per diem employee in the gun factory of the Washington Navy-Yard, was required by the Navy Department to work on Saturdays after 12 o’clock noon, from March 3, 1901, to November 10, 1905, as on other week days at his ordinary rate of pay except as stated below.
When the claimant and those of his class were required to work on Sundays and legal holidays, other thorn on Satur *204 days after 1% o'clock noon, they were paid additional pay therefor under article 1600, paragraph 5, clause C of the Navy JRegulations of 1900, which provides:
“(C) For. work performed on Sundays or on legal holidays the ordinary rate of pay with fifty per cent additional shall be paid.”
No allowance was made under said regulation to the claimant or those of his class for work performed Saturday afternoon, but they were allowed their ordinary pay by the Secretary of the Navy for the Saturday afternoon they did not work during the months of July, August, and September, 1904, when the navy-yard was closed by Executive order of June IS, 1904.
By the act of March 3, 1901, chapter 854 (31 Stat. L., 1404), entitled “ An act to establish a code of law for the District of Columbia,” section 1389 thereof provided :■
“Seo. 1389. When negotiable instrument is payable.— Every negotiable instrument is payable at the time fixed therein, without grace. When the day of maturity falls upon Sunday or a holiday, the instrument is payable on the next succeeding business day. Instruments falling due on Saturday are to be presented' for payment on the next succeeding business day, except that instruments payable on demand may, at the option of the holder, be presented for payment before twelve o’clock noon on Saturday when that entire day is not a holiday. The following days in each year, namely, the first day of January, commonly called New Year’s Day; the twenty-second day of February, known as Washington’s Birthday; the Fourth of July; the thirtieth day of May, commonly called Decoration Day; the first Monday in September, known as Labor’s Holiday; the twenty-fifth day of December, commonly called Christmas Day; every Saturday, after twelve o’clock noon; any day appointed or recommended by the President of the United States as a day of public fasting or thanksgiving; and the day of the inauguration of the President, in every fourth year, shall be holidays in the District within the meaning of this section. Whenever any day set apart as a legal holiday shall fall on Sunday, then and in such case the next succeeding day shall be a holiday; and in such cases and in all cases in which a Sunday and a holiday shall fall on successive days all commercial paper falling due on any of said days shall, for all purposes of presenting for payment or acceptance, be deemed to mature and be presentable for payment or acceptance on the next secular or business day succeeding.”
*205 The meaning of that section is clear and unambiguous, and has reference only to the time of payment of negotiable instruments falling due on legal holidays and on Sundays; and for that purpose the days therein designated are declared to be holidays. That such was the purpose in designating such days as holidays is clear from the language which follows, i. e., that “ whenever any day set apart as a legal holiday shall fall on' Sunday, then and in such case the next succeeding day shall be a holiday; and in such case and in all cases in which a Sunday and a holiday shall fall on successive days, all commercial paper falling clue on any of said clays shall, for all purposes of presenting for payment or acceptance, be deemed to mature and be presentable for payment or acceptance on the next secular or business clay succeeding.” The same meaning clearly attaches to the language which precedes such designation in the section. The subject in chapter 46, of which section 1389 is a part, has reference to negotiable instruments.
A legal holiday differs from Sunday in this, that “ Sunday being clothed with the idea of sanctity is in its nature dies non juridicus ” — as well as a clay of rest — while a legal holiday is the creature of statute, in which, as a rule, the purpose thereof is stated if not defined, and such purpose should not be extended beyond the clear import of the statute. Whether a legal holiday is dies non juridicus by virtue of some statute or is so ese vi termini is not material now to consider, further than to say that though “ holiday means a day of exemption from labor — in commemoration of some event, expression of gratitude, or respect for the memory of some person — that does not appear to have been the original purpose of the section under consideration, and hence no presumption can arise from the language used that Saturday afternoon was intended as a holiday with pay, much less that extra pay was intended when work was performed thereon.
At this point, however, we are confronted with the act of June 30, 1902 (part 1, 32 Stat. L., chapter 1329, p. 520), amending section 1389 by striking therefrom the words “within the meaning of this act” and inserting in lieu thereof the words “ for all purposes.”
*206 The substitution of these words following the designation of certain days as holidays, the claimant contends, makes said days legal holidays in the District of Columbia “ for all purposes,” and that therefore he is entitled not only to his ordinary pay when no work is performed on Saturday after 12 o’clock noon, but that when work is performed he is also entitled to be paid extra therefor under the navy regulations referred to.
Furthermore, the claimant contends that the question whether Saturday afternoon is a legal holiday in the District of Columbia is not an open question; and, in support of his contention, he cites the opinion of the Acting Attorney-General August 15, 1903 (25 Opin. Atty. Gen., 40), which was given in response to a question from the Secretary of War respecting the statutes regulating the hours of labor by clerks and other employees in the War Department. The Acting Attorney-General, after commenting on the various statutes fixing the hours the bureaus in the respective Departments shall remain open for public business, and referring to said section 1389, as amended, said:
“ I am of opinion that under the Code of the District, as amended, ‘ every Saturday after twelve o’clock noon ’ is a holiday therein for all purposes, to the same extent and upon the same footing as Christmas Day, July 4, etc. There is no law making it illegal to labor or to carry on ordinary business affairs on those holidays created bjr the District Code, neither is there anything in the legislation by Congress absolutely requiring that the Executive Departments of the Government be closed and the clerks and other employees therein be released from work on such days.
“ Wherefore, I have the honor to advise you—
“ 1. That ‘ every Saturday after 12 o’clock noon ’ is a holiday for all purposes within the District of Columbia, and is, therefore, one of the ‘ days declared public holidays by law ’ within the meaning of the statutes regulating the number of hours of labor which it is your duty to require of all clerks and other emploj^ees of your Department. You are, consequently, not obliged to require labor by such parties after the hour of noon bn Saturdays.
“ 2. Under the law as it now stands, you must require at least seven hours’ labor of all clerks and other employees in your Department every day in the year, except on Sundays and those days declared to be holidays by section 1389 of the Code of the District of Columbia, and during authorized *207 leave. It is also clear that you have the right, and if in your judgment the interest of the public service demands such action, it is your duty, by special order stating the reason, to extend the hours of labor on ordinary days as you may think proper, and to require of clerks and employees in your Department that they work on any or all holidays now established by law during the hours you may designate in such an order.”
Soon thereafter the Court of Appeals of the District of Columbia, in the case of Ocumpaugh v. Norton (24 App. D. C., 296), respecting the time within which appeals should be taken from the Commissioner of Patents, to that court, construed said section 1389 as applying to all official duties justifying the cessation of official work in the District of Columbia on Saturday afternoon.
The court, in commenting on the section as amended, said:
“The substitution of the words, for all purposes, in the amendatory act of June 30, 1902, has been gradually understood and accepted as broadening the scope of this provision so as to make it apply to all official duty and to justify the cessation of all official work. It seems to be accepted on both sides of these cases as constituting the afternoon of Saturday as a dies non juridieus.
So assuming it to be, we are urged on the one side, inasmuch as it is an old rule that the law takes no note of fractions of a day, to regard the whole of Saturday as a legal holiday for all judicial purposes; and, on the other side, for the same precise reason, to regard Saturday as no holiday, since there is enough of it left in which to transact all necessary and proper secular business.”
Then referring to the novelty of the question and the paucity of authorities in reference thereto, the court further said:
“ We think that in cases like the present the rule is no longer applicable that the law will take no note of fractions of days. The statute law here does specifically and in express words take note of such fractions. It expressly divides the Saturday into two parts, one for business purposes and the other for a holiday; and we see no reason why we should not give effect both, to the letter and the spirit of that law by taking note of half holidays in our computations.”
It will be noted from the opinion in that case that both parties accepted Saturday afternoon as a dies non juridieus, *208 and the court “ so. assuming it to be,” held- that Saturday was divided into two parts, one for business purposes and the other for a holiday, and that following the statute there was no reason why they should not give effect to the letter and spirit of the law by taking note of half holidays in their computations.
Accepting the construction given by the court of appeals of the District to the amended section of the District Code, as well as that given by the Acting Attorney-General, we must hold that Saturday after 12 o’clock noon is a holiday within the District of Columbia “ for all purposes.” And assuming, for the purpose of this case, the applicability of section 1389 to the employees in the service of the United States within the District, as contradistinguished from those in the service of the District of Columbia, the next and most important question is, When the claimant and those of his class were required to perform labor on Saturday afternoon, were they entitled to be paid therefor more than their ordinary rate, i. e., were they entitled to be paid extra therefor?
That it is within the authority and discretion of the head of a Department in cases of necessity or emergency — of which he is the judge — to require the employees in his Department to work on holidays there is and can 'be no controversy. This discretion was exercised when the Navy Department required the claimant to work Saturday afternoon.
Respecting the pay of the employees in the navy-yard, Revised Statutes, section 1545, provides:
“ Salaries shall not be paid to any employees in any of the navy-yards except those designated in the estimates. All other persons shall receive a per diem compensation for the time during which they may be actually employed.”
By the acts of March 3, 1883, section 4 (22 Stat. L., 563), and March 3, 1893, section 5 (27 Stat. L., 7l5), as amended by the act of March 15, 1898, section 7 (30 Stat. L., 316), it is made the duty of the heads of Departments to require of clerks and other employees in their respective Departments “ not less than seven hours of labor each day except Sundays, and days declared public holidays by law or Executive order.”
*209 The proviso to each of the sections referred to, however, gives to the heads of Departments authority, “ by special order, stating the reasons therefor, to further extend or limit the hours of service of any clerk or employee in their Departments, respectively; ” but in case of an extension it is expressly provided that “ it shall be without additional compensation.” That is to say, if the hours of service be extended to include work in excess of seven hours in any day except on Sundays and days declared public holidays, such service shall be rendered without additional compensation.
As said section 1389 is silent on the subject of pay to those who perform labor as well as to those who perform no labor on the days therein designated as holidays, authority therefor, if it exists, must be found elsewhere.
Under section 1545, quoted above, the claimant, a per diem employee, is entitled to be paid only when “ actually employed,” unless that condition has been modified or repealed by some subsequent statute.
By joint resolution of January 6, 1885 (23 Stat. L., 516), the employees of the navy-yard, as well as the employees of certain bureaus, were allowed January 1, February 22, July 4, December 25, and such other days as might be designated by the President as days of national thanksgiving, as holidays, with the right to receive the same pay on said days as on other days.
By joint resolution of February 23,1887 (24 Stat. L., 644), Memorial or Decoration Day was added as a holiday for all the employees of the Government, with the right to receive the same pay on that day as on other days.
Prior to the act of June 30, 1902, amending section 1389, Congress, by the act of February 1, 1901 (31 Stat. L., 746), granted to all the employees of the navy-yard and the gun factory, naval stations, and arsenals of the United States “ fifteen working days’ leave of absence each year, without forfeiture of pay during such leave.”
The two resolutions referred to express the purpose of Congress respecting payment to the employees of the navy-yard and others there named on the holidays stated, and to that extent and that only section 1545 is modified. Congress *210 evidently deemed such provision necessary to give such employees pay on such days — that is to say, to entitle such employees to pay on the holidays námed, Congress deemed it essential to make provision therefor, thereby in effect denying payment in the absence of such a provision.
As the pay given to employees for holidays when no work is performed is a gratuity, there must be some law authorizing it. As before stated, the claimant’s contention is grounded on the Navy regulation, supra, which provides the ordinary rate of pay with 50 per cent additional for work performed on Sundays and holidays; and this regulation the claimant contends has the force and effect of law. But. whether it has or not is immaterial, as the work in the navy-yard is under the control and direction of the head of the Navy Department, and when he directs work to be performed by per diem employees on holidays the regulation, if it has not the force of law or does not contravene some statute,, operates as a contract between the Government and those who-work under it. •
The regulation, however, was in force before the passage of the act declaring Saturday afternoon a holiday, and it has not been extended to include Saturday afternoon. On the contrary, after August 22, 1903, when the claimant was required to work on Saturday afternoon he was expressly informed that he would be given no additional compensation. Prior thereto the claimant had worked Saturdays afternoon and had been paid therefor his ordinary rate of pay, which he accepted without objection, and it is now too late to claim more even if he were otherwise entitled thereto. (Garlinger v. United States, 169 U. S., 316.) See also the cases of Whitsell (31 C. Cls. R., 5), Johnston (37 Ibid., 309), and United States v. Martin (94- U. S., 400). The information conveyed to the claimant and those of his class on August 22, 1903, .was in the form of an order as follows:
“Until further orders the clerks and all other employees of the Navy Department and the various bureaus and offices under its jurisdiction in the District of Columbia, including" the navy-yard, will render service on Saturdays during the same hours as on other days. Kef erring to section 5 (c), article 1600, United States Navy Regulations, it is further ordered that no additional compensation shall be allowed to- *211 any employee by reason of the extension of the hours of service to include Saturdays after 12 o’clock noon.
“ This order is rendered necessary by the condition of the work of the Navy Department.
“ By direction of the Secretary of the Navy.
“ CHARLES H. DARLING,
“Acting Secretary.”
It is insisted that the Secretary of the Navy had no authority to issue that order; that the first regulation referred to had the approval of the President, pursuant to Devised Statutes, section 1547, while the order was issued by the Secretary, without the approval of the President, and that therefore the claimant is entitled to the benefit of the provisions of the first regulation. True, the regulations of the Army and Navy have the force of law with respect to the person or subject-matter over which the Secretary has official control. (Gratiot v. United States, 4 How., 80; Smith v. Whitney, 116 U. S., 167.) Such regulations, however, to have the force of law, must conform to the law. (Symonds case (21 C. Cls. R., 148), affirmed on appeal, 120 U. S., 46.)
Under Devised Statutes, section 1547, the orders, regulations, and instructions issued by the Secretary of the Navy, as well- as alterations thereof, are presumed to have been issued “ with the approval of the President,” though they do not bear his signature.
In the case of Truitt v. United States (38 C. Cls. D., 398, 403), respecting the power of the President to act for the heads of the several Departments, the court said:
“ There can be no question but that the President may legally act through the head of a Department. It may be said in general that while the superintendence of the Administration devolves upon the President, he can not be required to become the head of every Department for the performance of ministerial acts under his own hand, and such was the effect of the ruling in the case of Williams v. The United States (1 How., 290).
“ That case followed the case of United States v. Eliason (16 Peters, 291, 302), where it was held, in respect of the rules for the regulation of the Army, that ‘ the Secretary of War is the regular constitutional organ of the President for the. administration of the military establishment of the nation; the rules and orders publicly promulgated through *212 him must be received as the acts of the Executive, and as such be binding upon all within the sphere of his legal and constitutional authority; ’ and further, that £ such regulations can not be questioned or defied because they may be unwise or mistaken.’
“ Later, in the case of Runkle v. United States (122 U. S., 543, 557), in respect of the right of the President to act through the Secretary of War in the approval of the proceedings and sentence of a court-martial dismissing an officer from the United States Army, it was said: ‘ There can bé no doubt that the President, in the exercise of his executive power under the Constitution, may act through the head of the appropriate executive department. The heads of Departments are his authorized assistants in the performance of his executive duties, and their official acts, promulgated in the regular course of business, are presumptively his acts. That has been many times decided by this court. Wilcox v. Jackson, 13 Peters, 498, 513; United States v. Eliason, 16 Peters, 391, 302; Confiscation Cases, 20 Wall., 92, 109; United States v. Farden, 99 U. S., 10, 19; Wolsey v. Chapman, 101 U. S., 755, 769.’ ”
However, as the first regulation referred to was not extended to include work performed on Saturday afternoon, and there was no law otherwise providing extra pay therefor, the order of the Secretary requiring the claimant to work at his ordinary rate of pay was not in conflict with the first regulation, for the reason that had the claimant performed the work without the order fixing the rate of pay, he would not have been entitled to extra pay under the first regulation.
Where Congress provides the ordinary rate of pay to per diem employees on holidays, as in the resolutions referred to, and they are required to perform labor on such days, then it is within the power of the head of a department, in the absence of any statute to the contrary, to make provision by regulation or contract to pay extra for services so performed. That is to say, when the statute declares certain days to be holidays and provides that certain employees shall receive the same pay on these as on other days, they are thereby exempt from work, with pay, on such days. That being so, to require thejn to work on such days at their ordinary rate of pay would be depriving them of the benefit of such statute. But it does not follow that exemption from work on such days carries with it the right to pay, as the right to pay as *213 well as the holidays is a matter of law; and if Congress in declaring certain days holidays makes no provision for payment to per diem employees on such days then section 1545 controls, and compensation can only be made for the time “ they may be actually employed.”
This view is in harmony with the decision of the Comptroller (11 Comp. Dec., 58), where it was held that neither per diem employees nor day laborers at the Washington Barracks were entitled to pay for the Saturday half holidays provided for by said section 1389 unless they worked during such half holidays.
Actual employment, then, is the basis for pay, and, as there is no law giving pay on Saturday afternoon without work, the claimant was not deprived of any statutory right when he was required to work at his ordinary rate, and therefore he is not entitled to recover, and his petition is dismissed.