CITY OF BILLINGS, Respondent, v. PIERCE PACKING CO. et al., Appellants.

No. 8490

Submitted March 24, 1945. Decided April 19, 1945.

161 Pac. (2d) 636

Messrs. Wood & Cooke, of Billings, for Appellants.

Mr. Melvin N. Hoiness and Mr. R. C. Dillavou, both of Billings, were for Respondent.

MR. JUSTICE CHEADLE delivered the opinion of the court.

Appeal from a judgment restraining and enjoining the defendants from encroaching upon any part of North 13th Street in the city of Billings between block 122 and 123, as said street appears on the plat of the original town (now city) of Billings, Montana; and ordering defendants to remove the encroachment on that portion of said street within sixty days from the entry of judgment.

The facts, so far as pertinent, are that on June 1, 1882, a plat of Billings, dated April 3, 1882, was signed and attested by officers of Minnesota and Montana Land and Improvement Co., certified by a surveyor that same was made by him from an actual survey, and filed and recorded in Custer county, Montana. It was filed and recorded in Yellowstone county (later created) on September 1, 1884. The plat contains recitals that the streets and avenues are all of the uniform width of eighty feet and the alleys twenty feet; that the regular lots are precisely twenty-five feet in width and 140 feet in length; and that the irregular lots have their precise length and width plainly marked on their boundaries. Thereafter, and prior to 1915, certain fences, corrals and cattle pens, some with concrete slabs, were built as part of a packing plant, extending some thirty feet into and upon the westerly side of North 13th Street, which now obstruct the free passage and use by the public of that street. On the easterly side of the street fences encroach thereon about two feet. In 1916, the Yellowstone Packing Company, the then owner of the plant, rebuilt the fences and corrals, putting concrete floors in certain of the pens and alleys, and repaired the scale house, at an expense of about $3,500.

On January 3, 1922, Yellowstone Packing Company, by letter (Pl. Ex. 5) addressed to the city council, contended that it had for more than ten years theretofore occupied about twenty feet of the westerly side of North 13th Street. In such letter that company offered to vacate that portion of the street so occupied by it adversely, upon thirty days' notice by the city, if the city

would vacate North 14th Street and the alleys in blocks 122 and 123. The city accepted such offer (Pl. Ex. 4) and by resolution and ordinance vacated North 14th Street and the alleys in blocks 122 and 123. No action was undertaken by the city toward removal of the encroachments until March 13, 1941, when the city clerk by letter, requested the defendant company to remove its encroachments, and advised it that in the event of failure to do so legal action would be taken. Traffic on this street was light until September, 1941, after which it became heavy and congested.

In March, 1936, Pierce Packing Company purchased the packing plant property, including the real estate described in the deed of conveyance as "Block 123 and Lots 1 to 12, both inclusive, Block 122, Original Town (now city) of Billings, Montana, according to the plat." The defendant company thereafter occupied the portion of the street in question and has refused to remove the encroachments therefrom. The evidence discloses that in 1939 defendant expended about $500 in repairing that portion of its plant encroaching on the westerly side of the street, and that to remove and replace same would cost in excess of $6,000. The record owner of the plant real estate is J. B. Mills, but the actual owner is Pierce Packing Company.

Errors are assigned in nine specifications. For the purpose of argument appellant groups these as follows:

1. The demurrer to the amended reply should have been sustained and certain exhibits excluded as evidence.

2. The filing of the plat of the city of Billings unaccompanied by the certificate of dedication provided for by Sec. 4985, Revised Codes, 1935, was a common law dedication and not a statutory one, and the city thereby acquired only an easement in North 13th Street. which easement was lost by abandonment.

3. Under the doctrine of equitable estoppel the city is estopped to compel the removal of the encroachments.

Appellants' argument that the demurrer to the amended reply should have been sustained and certain exhibits

excluded, is based on the lack of allegation or proof that defendants had notice, actual or constructive, of plaintiffs' Exhibits 4 and 5, above referred to. By Exhibit 5, Yellowstone Packing Company, in addition to its offer to remove the encroachments, offered to (and after the acceptance of its offer by the city did) dismiss two pending actions for the recovery of encroachment taxes levied upon the property encroached upon and paid under protest. Neither of these exhibits, constituting the agreement between Yellowstone Packing Company and the city, were placed of record in the county clerk's office. The resolution and ordinance vacating 14th Street and the alleys in blocks 122 and 123 were recorded, but contained no reference to the agreement to remove encroachments on North 13th Street.

We think these exhibits are material to the determination of the case, as will hereinafter appear, and were properly admitted in evidence. Defendants refer to the agreement between the Yellowstone Packing Company and the city as a "secret agreement" and argue that because it was not placed of record in the county clerk's office, they had no notice of it, and therefore it is in no way binding on them. But regardless, defendants had at least constructive notice of the width of the street, as dedicated, and, therefore, of the encroachments upon it. The conveyance by which defendants acquired title described the property conveyed as "Block 123, and lots 1 to 12, both inclusive, Block 122, Original Town (now city) of Billings, Montana, according to the plat." The plat was a part of the records of Yellowstone county, and was referred to in the deed for a particular description of the lots conveyed; by such reference it became, in effect, a part of the deed, and defendants will not be heard to say they had no notice of its contents.

In the recent case of Vaught v. McClymond, Mont., 155 Pac. (2d) 612, 616, this court said: "When lands are granted according to an official plat of a survey, the plat itself, with all its notes, lines, descriptions and landmarks, becomes as much a part of the grant or deed by which they are conveyed, and

controls so far as limits are concerned, as if such descriptive features were written out on the face of the deed or grant itself.'' Pittsmont Copper Co. v. Vanina, 71 Mont. 44, 227 Pac. 46; 26 C. J. S., Deeds, Sec. 101, p. 373.

If defendants did not know, as they contend, that the width of the street was eighty feet, and was encroached upon, they could not have relied upon title by adverse possession, so it is difficult to understand how the so-called ''secret agreement'' was material, or how they were injured by lack of notice of it. We think the demurrer to the amended reply was correctly overruled.

Defendants next contend that the dedication here involved was a common law dedication, whereby the city acquired only on easement in North 13th Street, which easement was lost by abandonment.

When the Billings plat was originally filed (1882) there was no Territorial statute governing dedication of privately owned lands to the public. Statutory provision for certificate of dedication was first enacted in 1895, as Sec. 5005 of the Political Code of that year, re-enacted as Sec. 4985, Revised Codes, 1935. Hence the filing of the plat of Billings constituted a common law dedication. Kaufman v. City of Butte, 48 Mont. 400, 138 Pac. 770; 16 Am. Jur. 400. Essential elements of a common law dedication are (1) an offer by the owner evidencing his intention to dedicate, and (2) acceptance on the part of the public. Kaufman v. City of Butte, supra; 16 Am. Jur. 399. Here the offer and intent to dedicate is clearly evidenced by filing of the plat (McQuillan, Municipal Corporation, 2nd Ed., Sec. 1687, p. 736; Kaufman v. City of Butte, supra) and acceptance by general use. McQuillan, supra, Sec. 1707. By a common law dedication the interest vested in the public is an easement. McQuillan, supra, Sec. 1725; 16 Am. Jur. 402.

Appellants base their argument of abandonment on adverse possession of the portion of the street in question by it or its predecessors in title since prior to 1915, with costly improvements that cannot be removed without substantial loss; that

such facts have been known to the city, without action being taken until the agreement with Yellowstone Packing Company in 1922, which was not placed of record so that subsequent purchasers had notice thereof; that appellant had neither notice nor knowledge of the claims of the city to the disputed area until March, 1941; that appellants made costly improvements in the disputed area, which cannot be removed without substantial loss; that even after the unrecorded agreement in 1922, the city did nothing whatever to establish its claimed rights until this action was brought.

We think the weight of authority supports the rule that abandonment of a street dedicated to the public cannot be established by adverse possession, as stated in 1 Am. Jur. 850: "The great weight of authority sustains the rule that the statute of limitations does not run in favor of those who occupy property of this character; that no title can be acquired thereto by such occupancy, no matter how long it has continued, and whatever may have been its character; and that the rights of the public to its highways cannot be lost by acquiescence, even though such highways may not have been opened or used." Town of Choteau v. Blankenship, Okla., 152 Pac. (2d) 379.

Pine v. Reynolds, 187 Iowa 379, 174 N. W. 257, 6 A. L. R. 1206, follows the rule laid down in Quinn v. Baage, 138 Iowa 426, 114 N. W. 205, 207, stated thus: "But where the road has been established and continually used, the mere fact that the fences bordering it are not on the true line and the portion beyond has been occupied by the landowner up to the fence and not made use of by the public will not work an estoppel against the public, but the entire width of the highway may be appropriated by the public whenever required for the purposes of travel * * * ."

In Wolfe v. Sullivan, 133 Ind. 331, 32 N. E. 1017, an action was brought by the municipality to abate an alleged nuisance in that the defendants, owning a lot, had erected a fence running parallel to the street, but which encroached on the street a distance of ten feet. It was held that the maintenance of the

encroachment for the period required to secure title by adverse possession gave no right to continue it. See also McQuillan, Municipal Corporations, 2nd Ed., Secs. 1513, 1516, and supporting cases; Territory v. Deegan, 3 Mont. 82; New Rochelle v. New Rochelle Coal Co., 83 Misc. 194, 144 N. Y. S. 852, affirmed 173 App. Div. 952, 158 N. Y. S. 1111; Sipe v. Alley, 117 Va. 819, 86 S. E. 122; People v. Southern Pacific R. R. Co., 68 Cal. App. 153, 228 Pac. 726.

In any event it appears in this case that, at least so far as appellants' predecessors in title are concerned, possession was not adverse but permissive. This is established by the 1922 agreement, above referred to, by which Yellowstone Packing Company agreed to vacate the street at any time upon thirty days' notice. Under such circumstances the possession cannot be said to have been hostile. Even assuming that lack of notice of that agreement would change the relationship, appellant cannot successfully claim adverse possession for a period of over five years, or since it acquired the abutting property. In Price v. Western Life Ins. Co., Mont., 146 Pac. (2d) 165, 166, this court said:

"The rule governing establishment of title to land by adverse possession is clearly established in this jurisdiction. Among the facts that one must establish in seeking to oust the title of another and establish his own, is hostile possession for the statutory period. The possession of the plaintiff is shown by the record to have been permissive, not hostile. We said in a recent case: 'While a permissive possession may subsequently become hostile (2 C. J. S. 639, Adverse Possession, Sec. 87), to make it so there must be a repudiation of the permissive possession * * *, and the repudiation must be brought home to the owner by actual notice.' " Kelly v. Grainey, 113 Mont. 520, 129 Pac. (2d) 619, and cases cited.

We agree with the rule as to abandonment of easements, quoted by appellant from 17 Am. Jur., paragraph 144. But the reference quoted from deals with private, not public, easements. Even were this not the case, the rule quoted, as applied

to the facts here, does not appear to support appellants' argument.

The situation here presented is somewhat analogous to that involved in Kaufman v. City of Butte, supra, where this court said [48 Mont. 400, 138 Pac. 772] : ''The evidence shows conclusively that plaintiff's predecessors, who owned the building until within three or four years of the commencement of this suit, were not holding the ground upon which the building stands adversely to the city, and the fact, if it be a fact, that the city officials negligently or wrongfully permitted the unlawful use of this portion of the street cannot defeat the right of the public to its use for the purposes for which it was dedicated.''

As stated in the rule urged by appellants, an intention to ▮ abandonment is one of the necessary elements of abandonment. Any such intention here is clearly negatived by the action of the city in entering into the agreement with Yellowstone Packing Company. We have studied the authorities cited by appellants, and believe that, either they are not in point, or follow the minority rule on the question presented.

Appellants' final contention is that under the doctrine of ▮ equitable estoppel, the city is now estopped to compel removal of the encroachments. They argue that the Pierce Company was a bona fide purchaser of the packing plant property, including the encroachments, without notice, actual or constructive, that the pens encroached upon North 13th Street; that the city, knowing of the encroachments for a long period of time, and having permitted them to remain without demand for removal until 1941, is estopped from now compelling their removal.

As above stated, appellants were chargeable with notice, when they acquired this property, that the street in question was eighty feet in width. The very apparent fact of the encroachments to the extent of about thirty-two feet, should have been sufficient to cause an investigation of the true situation, which

might readily have been ascertained by an examination of the public records of the city.

The general rule is that equitable estoppel is applied to municipal corporations with great caution and only in exceptional cases. "While the doctrine of equitable estoppel is sometimes invoked in what are termed 'exceptional cases,' it is always applied, and wisely so, with much caution to municipal corporations in matters pertaining to their governmental functions. * * * There is greater reason why city streets should not be subject to destruction by nonuse or adverse possession than can be found applicable to any other kind of property. No other kind of public property is subject to more persistent and insidious attacks or is less diligently guarded against seizure." McQuillan, Municipal Corporations, Vol. 4, Sec. 1515, and supporting cases.

The statutory declaration of the doctrine of equitable estoppel is found in Sec. 10605, Revised Codes, 1935, subd. 3, as follows: "Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it."

In defining this doctrine, this court, in Mundt v. Mallon, 106 Mont. 242, 76 Pac. (2d) 326, 329, said: "Generally speaking estoppel arises when a party by his acts, conduct, or acquiescence has caused another in good faith to change his position for the worse. [Citing cases.] The following six essential elements have been held necessary to constitute an equitable estoppel: '1. There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him. 4. The conduct must be done with the

intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. 5. The conduct must be relied upon by the other party, and thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.' Lindblom v. Employers' Liability Assur. Corp., supra [88 Mont. 488, 295 Pac. 1007].'' And see Waddell v. School Dist., 74 Mont. 91, 238 Pac. 884.

The rule as to estoppel by silence is set out in Sherlock v. Greaves, 106 Mont. 206, 76 Pac. (2d) 87, 91, thus: ''To constitute an estoppel by silence or acquiescence, it must appear that the party to be estopped was bound in equity and good conscience to speak, and that the party claiming estoppel relied upon the acquiescence and was misled thereby to change his position to his prejudice. Mettler v. Rocky Mountain, etc., Co., 68 Mont. 406, 219 Pac. 243. Mere silence cannot work an estoppel. To be effective for this purpose, the person to be estopped must have had an intent to mislead or a willingness that another should be deceived; and the other must have been misled by the silence.''

Without going into an extended discussion of the evidence, we must hold that it is insufficient to establish an estoppel against the city under the rules announced by these decisions. The city was in no way connected with the transaction by which appellants acquired the property involved, and there is not even a suggestion that it had knowledge that appellants contemplated such purchase. No representations regarding this title were made by the city, nor has it been shown that it had an intent to mislead or a willingness that appellants be deceived. Likewise, because, as we have said, of its notice of the encroach-

268

ments at the time of purchase, it has not been shown that appellants were misled by the silence of the city.

The case of Von Tobel v. City of Lewistown, 41 Mont. 226, 108 Pac. 910, cited by appellant, is of little assistance here. That was held by this court to be one of the exceptional cases to which the doctrine of equitable estoppel was applicable. The decision there was based, in part at least, upon a serious doubt, as to whether there had ever been a dedication of or an attempt to dedicate the portion of the street in question. The record here does not disclose facts to constitute this one of the "exceptional cases" falling within the doctrine of equitable estoppel.

There being no error, the judgment is affirmed.

Mr. Chief Justice Johnson and Associate Justices Morris, Adair and Angstman concur.

Petition for rehearing denied Sept. 22nd, 1945.