## DOING v. DISTRICT OF COLUMBIA.
### No. 807.

Municipal Court of Appeals for the
District of Columbia.
Argued June 13, 1949.

Decided July 7, 1949.

John G. Epaminonda, Washington, D. C., and William P. Doing, pro se, for appellant.

Edward A. Beard, Assistant Corporation Counsel, Washington, D. C. (Vernon E. West, Corporation Counsel, Chester H. Gray, Principal Assistant Corporation Counsel, and Hubert B. Pair, Assistant Corporation Counsel, Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellant was convicted in the traffic branch of the Municipal Court of parking on a Saturday afternoon in space covered by a parking meter without depositing five cents in the meter. Although the sentence imposed was only a $3 fine or three days in jail, we allowed an appeal[1] because of the importance of the question of whether parking meters bearing the signs now displayed upon them restrict parking in downtown sections of the city on Saturday afternoons.

The specific charge against appellant as contained in the information was that he parked "in a certain meter zone at a time when the parking meter displayed a sign showing illegal parking." The evidence showed that he parked in front of 1420 New York Avenue, N. W., at 2:15 o'clock on a Saturday afternoon at a parking meter with the red "expired" flag showing.

The controversy arises by reason of the fact that the parking meter bore a printed sign reading "ONE HOUR PARKING, 9:30 A.M. TO 4 P.M., except SUNDAYS AND HOLIDAYS."

The position of appellant is that this sign constituted notice to him and to other motorists that the one-hour parking restriction and the requirement that a coin be deposited

---
[1] Code 1940, Supp. VI, 11—772(a).

in the meter were not in effect on Sundays and holidays, that by law in the District of Columbia Saturday after twelve o'clock noon is a legal holiday and hence that he was not guilty as charged in the information.

The District of Columbia concedes that by D.C.Code 1940, § 28—616, "every Saturday, after twelve o'clock noon" is made a holiday in the District of Columbia "for all purposes" just as are Christmas Day, the Fourth of July, New Year's Day, Washington's Birthday, Decoration Day, Labor Day, Thanksgiving Day and Inauguration Day.[2] It urges, however, that the sign on the parking meter purports to be only a summary of applicable traffic regulations and that such regulations do not exempt Saturday afternoons from parking meter restrictions.

The regulations are somewhat lengthy, but we believe we should first review their provisions and then determine their applicability to the present case.

By the Act of March 3, 1925, 43 Stat. 1121, as amended, Code 1940, § 40—603(a), the District Commissioners were vested with authority to regulate traffic on the streets of the District of Columbia. By the Act of February 16, 1942, 56 Stat. 92, as amended, Code 1940, Supp. VI, § 40—804(e), the Commissioners were authorized to make regulations for the installation and use of parking meters within the District of Columbia.

Traffic and motor vehicle regulations for the District of Columbia, as promulgated by the Commissioners, are contained in two parts. Part I, issued in pamphlet form, is entitled "Rules of the Road." By section 1(z) of Part I, Article 1, there is delineated a "congested district" divided into three zones. The south side of New York Avenue between 14th and 15th Streets, Northwest, is included in· Zone 1 of such congested district. · The area involved in the present case is in front of the Evans Building on the south side of New York Avenue between 14th and 15th Streets, Northwest. Part II of the traffic and motor vehicle

regulations, covering parking, turns, one-way streets, parking meters, stop signs, and pedestrian safety zones, is included in a 144 page mimeographed document which in accordance with law has been officially ·published in one or more Washington newspapers.

By Article XIV of Part II of the traffic regulations, Section 71(a), parking in Zone 1 of the congested district, with certain exceptions, is prohibited from 8 to 9:30 a. m. and from 4 to 6 p. m., and is limited to one hour from 7 a. m. to 6:30 p. m. except as otherwise specifically prohibited or restricted. Under this regulation, at the time and place involved, parking was limited generally to one hour.

Following regulations prescribing parking restrictions for different parts of the city, there appears, as Section 71(f), Part II, the general provision upon which the District Government largely relies in the present case. It provides:

"71(f) Provided that the foregoing items of this Section whereby parking is limited to two (2) hours or less or whereby parking is prohibited from 7 a. m. to 6:30 p. m. or 8 a. m. to 6 p. m. shall not be in force and effect on Sundays and New ·Year's Day, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Armistice Day, Thanksgiving· Day and ·Christmas Day and that all other of the foregoing restrictions of this Section, except where official. signs indicate that there shall be NO PARKING AT ANY TIME, shall not be in force and effect on Saturdays, Sundays or legal holidays."

It is the Government's contention that the area involved in the· present case was subject to general one-hour parking restrictions, that the just quoted regulation removed such restrictions only on Sundays and the holidays specified, that Saturday afternoons were not specified, and hence that the one-hour parking restriction remained in effect on Saturday. afternoons.

Section 75, Article XVIII, Part II, covers generally the subject of parking meters.

---

[2] Campbell v. United States, ·D.C.Mun. App., 65 A.2d 191; McCoy v. Duehay, 51 App.D.C. 363, 279 F. 1001; Swenk v. Nicholls, 39 App.D.C. 350; Adams v. ·United States, 42 Ct.Cl. 191; 25 Ops. Att'y Gen. 40.

Applicable parts of Section 75 provide as follows:

"(f) Sixty-minute parking zones shall be located at such * * * points as may be designated by parking meters and appropriately marked spaces.

"(g) Immediately after parking a vehicle in any parking meter zone, the operator shall deposit a five cent coin (nickel) in the parking meter adjacent to such parking meter zone. The said parking space may then be used by such vehicle during the parking limit fixed by these regulations and indicated on the parking meter. If said vehicle shall remain parked in any such parking space beyond the parking limit fixed by these regulations and indicated on meter, the parking meter shall display a sign showing the overtime parking, and in that event such vehicle shall be considered to be illegally parked.

"(h) No person shall park or cause, allow, permit or suffer any vehicle registered in his name to be parked overtime or beyond the lawful period of time as indicated by these regulations and indicated on the meter.

"(i) No vehicle shall park in a parking meter zone at any time when such parking is otherwise prohibited by these regulations. * * *

"(k) Parking meter zones may be used without charge or without depositing coins in the meters *at such times as parking is not limited to one hour or less.*" (Emphasis supplied.)

The District urges that since, as already shown, parking at this location on Saturday afternoons is limited to one hour, therefore such location may not be used without charge at that time.

■ We have no doubt that the District is correct in its interpretation of the regulations. Nor have we any doubt that the signs upon the meters use the word "holidays" as defined in the traffic regulations rather than as used in the general statute.[3] There are other differences between the regulation and the statute. For example, the traffic regulation (Sec. 71(f) above) includes Armistice Day whereas the general statute as printed in the Code does not, and the statute includes Inauguration Day but the regulation does not. It seems clear that the traffic regulations were intended to exclude from the meter provisions only those days when crowds do not congregate in the congested district. It is well known that, except possibly in the hot summer months, the streets in this district are often more crowded on Saturday afternoons than on other business days.

■ Furthermore we are convinced that the general public does not consider Saturday afternoon as a "holiday" in the usually accepted use of that term and hence that the public is not misled by the signs upon these meters. We believe this is a practical question rather than one calling for fine legal distinctions and nice technical interpretations. Government departments and banks are now closed all day Saturday but, except during July and August when some stores are closed, all or practically all downtown commercial establishments are open. While it is an accepted rule that everyone is presumed to know the law, this applies to traffic regulations just as much as it does to statutes, and we believe that the public is much more likely to actually know of traffic regulations and practices than it is to know of a law hidden, as the "holiday" statute is, in a negotiable instruments law.

■ Appellant's counsel seeks in general terms to urge the defense of "entrapment". We think it unnecessary to discuss the technical meaning of that term except to say that it does not apply under the circumstances here present. More accurately stated, we believe appellant's position is that by placing the signs upon the meters the District Government is estopped to urge that Saturday afternoon is not a holiday within the meaning of the traffic regulations. However, the principle of estoppel generally does not apply to a city or state when acting in its governmental capacity, as it was here.[4] Furthermore, as already not-

---

[3] The statute is part of the negotiable instruments law and, as originally enacted, applied only to commercial paper.

[4] Yellow Cab Taxi Service v. City of Twin Falls, Idaho, 68 Idaho 145, 190 P. 2d 681; City of Billings v. Pierce Packing Co., 117 Mont. 255, 161 P.2d 636; 38 Am.Jur., Municipal Corporations, § 668.

ed, we are convinced that the signs on the meters were not misleading. We conclude that appellant's conviction was proper.

Affirmed.