FILED

07/07/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0696

DA 19-0696

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 176

TYLER L. CALLSEN,

Plaintiff and Appellant,

v.

MISSOULA COUNTY, STATE OF MONTANA,

Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-17-1058
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Sean M. Morris, Worden Thane P.C., Missoula, Montana

For Appellee:

Kirsten H. Pabst, Missoula County Attorney, John W. Hart, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs:  June 10, 2020

Decided:  July 7, 2020

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Appellant Tyler Callsen (Callsen) appeals the November 12, 2019 Order of the Fourth Judicial District Court, Missoula County, granting Missoula County (County) summary judgment and declaring that the right-of-way next to Callsen's property extends from Rio Vista Drive to the Bitterroot River (River) as depicted on the subdivision plat and provides legal access for the public to the River from Rio Vista Drive. We affirm.

¶2 We restate the issues on appeal as follows:

*Whether the District Court correctly determined that the public right-of-way from Rio Vista Drive extends to the banks of the Bitterroot River.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The parties do not dispute the facts set forth by the District Court:[1]

Plaintiff Tyler L. Callsen (Callsen) owns and lives on Lot 3 of Block 3 of Rio Vista Addition, a platted subdivision of Missoula County. He also owns portions of the SW1/4NE1/4 of Section 1, Township 12 North, Range 20 West, MPM, Missoula County Montana, excluding many parcels, including the Rio Vista Addition and a parcel described in Book 149 of Missoula County Micro Records at Page 999 and as shown on Deed Exhibit 990. Both the Rio Vista Addition Plat, dated 1960, and Deed Exhibit 990, dated 1961, were prepared by professional land surveyor Vernon Peterson (Peterson).

A predecessor in interest on some or perhaps all of the above-described land was Ida Muller McPherson (McPherson). On August 31, 1960 she platted the Rio Vista Addition Subdivision (subdivision) and on the plat donated various rights-of-way to the public. The subdivision plat has two pages. On the first page of the plat, a map depicts an unnamed right-of-way from Rio Vista Drive to the banks of the Bitterroot River (river). On the second page of the plat, McPherson signed the plat and stated her

---

[1] We include only the facts found by the District Court that relate to the issue on appeal.

2

intent to donate, dedicate and grant the right-of-way "to the public forever." The Missoula County Board of Commissioners also signed and accept[ed] the right-of-way on page two. Taken together, based upon Mont. Code Ann. § 76-3-307, the Court finds both pages of the plat constitute an instrument of conveyance or deed of a right-of-way from McPherson to Missoula County, to hold in trust for the public.

The map on the first page of the plat illustrates the public right-of-way between Block 2 and 3 extending from Rio Vista Drive to and beyond the banks of the river. Although unnamed on the plat, this right of way is referred to by Plaintiff Callsen as the "Rio Vista Alley." The Court will also refer to this right-of-way as "Rio Vista Alley." The plat map also depicts all of Block 3 and the western terminus of Briggs Street being adjacent to the banks of the river, as shown below on an excerpt of page one of the plat:



McPherson resided on and owned Lot 3 of Block 3 of the subdivision (Lot 3) until she died in 1994. Callsen purchased Lot 3 in December 2012.

In 2015, because his house, as constructed by McPherson, was an encroachment into the Rio Vista Alley right-of-way, at Callsen's request the Board of County Commissioners of Missoula County abandoned the northerly 20 feet of Rio Vista Alley by Resolution 2015-011.

. . .

3

In 2015, Plaintiff Callsen hired Ken Jenkins (Jenkins), a professional surveyor, to find the original monuments set by Peterson when preparing the Rio Vista plat and Deed Exhibit 990. Jenkins' findings were memorialized in Missoula County Certificate of Survey No. 6471, a portion of which is shown below as taken from Callsen's brief pointing out the germane found monuments:



Note that Jenkins concluded that the northwest corner of Lot 1, Block 2, Rio Vista Addition is located 31.40 feet from the Bitterroot River but that he set his pin for the southwest corner of his Tract 2 ten feet back from river and the described actual southwest corner.

¶4 Callsen contends the metes and bounds description included with the plat map establishes a fixed boundary and thus Rio Vista Alley stops at least 21.40 feet from the River and he owns the land between the end of the alley and the River by virtue of his purchase of Tract 2 of Certificate of Survey (COS) 6471. Missoula County contends the right-of-way conveyed by McPherson—generally known as Rio Vista Alley—

4

extends to the River because it was granted to the public via the plat conveyance, the plat map shows the alley extending into the River, the metes and bounds description included with the plat map is a meander line setting the River as the boundary, and the pins were deliberately set back to avoid them being swept away by the meanderings and water level fluctuations of the River. The District Court granted summary judgment to Missoula County, determining the metes and bounds description included in the subdivision plat is a meander line, not a fixed boundary, and the subdivision plat thus donates the right-of-way from Rio Vista Drive to the River and the Commissioners' acceptance of that right-of-way constitutes an instrument of conveyance or deed of a right-of-way to Missoula County to hold the conveyance in trust for the public. Callsen appeals.

## STANDARD OF REVIEW

¶5 We review a district court's grant of summary judgment de novo, applying the criteria outlined in Mont. R. Civ. P. 56. *Ash v. Merlette*, 2017 MT 305, ¶ 8, 389 Mont. 486, 407 P.3d 304; *Bardsley v. Pluger*, 2015 MT 301, ¶ 11, 381 Mont. 284, 358 P.3d 907.

## DISCUSSION

¶6 *Whether the District Court correctly determined that the public right-of-way from Rio Vista Drive extends to the banks of the Bitterroot River.*

¶7 Callsen contends the Rio Vista subdivision is set back a distance from the River such that a strip of land exists between the Rio Vista Addition subdivision and the River. He asserts the District Court inaccurately determined Peterson's survey description

5

contains distances that extend to the River[2] and the survey does not specifically provide that Rio Vista Alley does not extend to the River. Callsen recorded COS 6471, a retracement survey, he commissioned in 2015. He asserts that by retracing the original survey, COS 6471 shows that if the distances—the metes and bounds—are retraced, none of the distances extend into the River. He contends the original monuments— located 21.4 feet back from the River—take precedence or are paramount over lines pursuant to § 70-20-201, MCA.

¶8 The County asserts that in 1960 McPherson granted a right-of-way with River access to be held by Missoula County in trust for the public. It was McPherson's intent that Rio Vista Alley extend to the River consistent with the map on the first page of the plat such that the graphic illustration of her intent takes precedent over the written survey description. McPherson did not expressly exclude any land above the low water mark of the River from Rio Vista Alley or state any such intent on the subdivision plat as would be required if her intent was to end the Rio Vista Alley right-of-way some distance before the River. The County further asserts any grant of an interest in property, like the Rio Vista Alley right-of-way from McPherson, must be interpreted in favor of the grantee public pursuant to § 70-1-516, MCA. Finally, the County asserts

---

[2] The County agrees the District Court was incorrect in stating the "survey description contains distances that extend into the river" but asserts this statement to be harmless in that it was made in the context of the court's discussion that the Rio Vista Alley between Blocks 2 and 3 as depicted on the plat map extends out into the River, so that the statement may be referring entirely to the plat map depiction. This assumption appears to be accurate in light of later acknowledgment of the District Court that the 1964 survey pins were set just over 30 feet from the River to avoid their being washed away by the ever-changing River.

§ 70-2-201, MCA, is a codification of surveying principles used to construe written descriptions, not principles for interpreting an instrument of conveyance itself. The County asserts § 70-20-201, MCA, does not apply as there are other sufficient circumstances to determine the conveyance of the real property here—namely, the plat map.

¶9 "Other than by operation of law, transfers of real property may occur only by written conveyance expressing the grantor's intent to convey particularly described property to another." *Ash*, ¶ 11. Construction of an instrument of conveyance, including the question of whether its terms are vague or ambiguous, is a question of law. *Ash*, ¶ 11. Courts, to the extent lawful and reasonably ascertainable, must construe instruments of conveyance to give full effect to the intent of the grantor at the time of the conveyance. *Ash*, ¶ 13.

¶10 On August 31, 1960, McPherson donated a right-of-way—generally referred to as the Rio Vista Alley—to the public by way of the Rio Vista Addition Subdivision. The subdivision plat consists of two pages. The first page is a map of the subdivision, which depicts a public right-of-way from Rio Vista Drive to just beyond the banks of the River. The second page containing the plat survey description and dedication is signed by McPherson, states her intent to donate the right-of-way, and dedicates and grants the Rio Vista Alley right-of-way "as shown on the accompanying plat." Page two also contains the acceptance of the right-of-way by the Missoula County Board of Commissioners. The District Court correctly determined the two-page subdivision plat

7

and dedication to constitute the instrument of conveyance or deed of the Rio Vista Alley right-of-way from McPherson to Missoula County.[3] *See* § 76-3-307, MCA. From this document, the intent of McPherson, the grantor, was clearly to provide the public an ongoing, unending access to the River along the Rio Vista Alley right-of-way.

¶11 In an attempt to create ambiguity related to McPherson's intent, Callsen conflates surveying principles used to construe written descriptions with principles for interpreting an instrument of conveyance itself, asserting the southwest boundary of the subdivision is a fixed boundary as no calls or reference is made in the plat survey description to the River. We agree with the District Court there is no ambiguity in regard to McPherson's intent.

¶12 The case is analogous to that of *Ash*. In *Ash*, the Streeters acquired approximately 43 acres of property surrounding Parker Lake. In 1991, the Streeters subdivided the property into two tracts—a 5.66 acre tract and a 37.17 acre tract—both including lake frontage. In 1992, the Streeters sold the 37.17 acre tract (later known as the Merlette property). In 2000, Ash acquired the 5.66 acre tract (known as the Ash property). As created and described by the Streeters' 1991 COS 10404, the Ash property included 577 feet of frontage on Parker Lake. COS 10404 described the Ash

---

[3] The subdivision dedication includes a survey description describing the boundary of Block 3 and the right-of-way approximately 20 to 30 feet from the current riverbank, but the accompanying plat map shows no such reserved strip. As the language of McPherson's intent of conveyance clearly and unequivocally intended a continuing public access to the River, the written boundary description is consistent with the common law rule that a riparian boundary specified or depicted in an instrument of conveyance, or incorporated survey or plat map, is merely a meander line, as discussed later in this Opinion.

8

property boundary along Parker Lake by a particularized metes and bounds plot running from a referenced starting point on the high-water mark and then on and along the high-water mark along three specified courses marked by pin locations. Over several years, unhappy differences arose between Merlette and Ash, resulting in Ash asserting claims for declaratory judgment seeking judicial declaration Ash owned the land between the high and low water marks and seeking injunction of Merlette from interfering with Ash's lake access. Merlette, similar to Callsen, asserted the specific metes and bounds description of the Parker Lake boundary line in COS 10404 limited Ash's access only to the high-water mark. Ash, similar to the County here, asserted, based on the meander line methodology for describing riparian borders, her property extended to the low-water mark.[4] We affirmed the district court's determination that Ash owned the property to the low-water mark and in so doing discussed concepts which are important in our analysis of this case.

¶13 As discussed in *Ash*, beginning in the nineteenth century, the Public Land Survey system developed the technique of surveying meander lines along a water course which became a generally accepted standard and practice. *Ash*, ¶ 15.

> Consistent with this generally accepted standard and practice, a federal and state common law rule soon developed that, unless the language of a conveyance clearly and unequivocally manifests a more limited intent

---

[4] While the dispute in this case does not involve the difference between the high and low water marks, the dispute is similar in that Callsen, similar to Merlette, asserts the specific metes and bounds described in the plat provide for termination of Rio Valley Alley prior to the River, and the County, similar to Ash, asserts the intention of the conveyance together with the plat map are meant to provide a meander line methodology for describing the boundary of Rio Vista Alley right-of-way to extend to the River.

to fix a riparian boundary to the precise course specified in a property description, a riparian boundary specified or depicted in an instrument of conveyance, or incorporated survey or plat map, is merely a meander line, *i.e., a mere approximation of* the ever-fluctuating and meandering edge of a water body intended as *the actual boundary line* of the property. Except as otherwise clearly provided in the language of conveyance, a meander line merely approximates 'the border-line of the stream' and signifies that the water course is the actual boundary rather than 'the meander line . . . run on the land.' Consequently, unless otherwise unequivocally provided on the face of the instrument, an instrument of conveyance describing a riparian boundary by reference to a particularized metes and bounds description, *i.e.*, a meander line, conveys title at least to the low-water mark of the body of water rather than the line precisely described by metes and bounds.

*Ash*, ¶ 16 (citations and footnote omitted) (emphases and alteration in original).

¶14 Callsen asserts that since the survey description contains no calls or references to the River, the descriptive metes and bounds of the survey description were intended to fix a specific boundary. While the conveyance document does not reference water marks, the River, or make reference to the term "meander," as we discussed in *Ash* an instrument of conveyance may describe a meander line without specifically using that term:

[E]xpress reference or use of [these terms] in an instrument of conveyance is not talismanic. By nature, water bodies meander and their boundaries are meandering. With or without express reference to the term 'meander,' a metes and bounds description that plots a varying course, using specific measured distances running from precisely referenced points, to plot an otherwise non-uniform edge of a water body is an approximate meander line unless otherwise clearly provided in the instrument of conveyance.

Unlike other particularized metes and bounds descriptions intended to establish stationary boundary lines on the ground, the purpose of a particularized metes and bounds description along a water body is to provide a reasonably precise approximation of an ever-varying course along the non-stationary and non-uniform edge of the water body. The particularized approximation permits a reasonably precise description of the location and quantity of land bought or sold with the understanding that the actual

10

boundary and quantity of the land varies with the fluctuating, meandering water line of the lake or stream.

*Ash*, ¶¶ 20-21.

¶15    As noted by the County, when, as here, a plat is the conveyance instrument:

> [T]he plat itself, with all its notes, lines, descriptions and landmarks becomes as much a part of the grant or deed by which they are conveyed, and controls as far as limits are concerned as if such descriptive features were written out on the face of the deed or the grant itself.

*Billings v Pierce Packing Co.*, 117 Mont. 255, 261-62, 161 P.2d 636, 638 (1945) (quotation omitted).  The River is such a landmark and the plat map clearly shows the Rio Vista Alley right-of-way extending into the River.[5]  Had McPherson intended to separate the subdivision from the River by a narrow strip of land between the subdivision and the River, as contended by Callsen, the plat map would have shown such a strip—but it does not.

¶16    We agree with the District Court that the metes and bounds descriptions of the subdivision plat are meander line descriptions—particularized metes and bounds plots approximately corresponding to the low water mark of the otherwise non-uniform edge of the meandering River.  Aside from the express references to specific metes and bounds nothing in the subdivision plat map conveyance instrument indicates any intent of McPherson to strip herself or the public of access to the River along the Rio Vista Alley right-of-way.  Given the clarity and lack of ambiguity of McPherson's donative

---

[5] In fact, all of Block 3 and Briggs Street are clearly platted to the River as well.

intent and the accompanying map depiction, it would make no sense she intended the descriptive metes and bounds to be interpreted as a clear and unequivocal manifestation of a more limited intent to fix an exact boundary rather than interpreted as a meander line approximating the low water mark border line of the River.[6] While Rio Vista Alley does not include specific calls or reference to the River or the term "meander," the District Court correctly concluded the metes and bounds description was, in essence, a meander line indicating a boundary adjacent to the River rather than a specific, fixed boundary line. The District Court correctly interpreted the conveyance instrument to give full effect to McPherson's intent at the time of the conveyance. The court correctly did not need to apply § 70-20-201, MCA, to construe the descriptive part of the conveyance instrument, but rather was able to appropriately interpret the conveyance instrument itself to give full effect to McPherson's intent at the time of the transfer.

## CONCLUSION

¶17    The District Court correctly determined, when taken together, the subdivision plat donating a right-of-way from Rio Vista Drive to the banks of the Bitterroot River and the Commissioners' acceptance of that right-of-way constitute an instrument of conveyance or deed of a right-of-way to Missoula County to hold the conveyance in trust for the public.

---

[6] We agree with the County that it makes no sense McPherson would have conveyed a right-of-way that ended abruptly at her own property, which she was not including in the subdivision, rather than extending the right-of-way into the River as depicted on the plat map.

12

¶18    Affirmed.


                                        /S/ INGRID GUSTAFSON


We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE