BARCUS, Respondent, *v.* GALBREATH, et al., Appellants.

No. 8849

Submitted May 18, 1949. Decided June 15, 1949.

207 Pac. (2d) 559

538

See also 207 Pac. (2d) 565.

Mr. S. J. Rigney, Cut Bank, for appellant.

Mr. S. S. Frisbee and Mr. Lloyd A. Murrills, both of Cut Bank, for respondent. Mr. Rigney and Mr. Murrills argued orally.

MR. JUSTICE ANGSTMAN:

Plaintiff brought this action to quiet title to a tract of land in Glacier county. The complaint started out in the short form. It increased in length as the proceedings progressed. The record is interspersed with demurrers, motions, objections, orders, and amended pleadings so that we are able to ascertain the issues disclosed by the pleadings after studying 190 of the 500 pages of the transcript.

The issues are narrowed down to a controversy between plaintiff and defendant Susie H. Galbreath only. Plaintiff bases her claim of ownership upon adverse possession since April 1923 and the payment of taxes from 1923 until the commencement of the action which was in 1940. The answer of Susie H. Galbreath as finally amended denies ownership in plaintiff and asserts ownership in herself. It contains several cross complaints. In them it is alleged that defendant Susie H. Galbreath is the wife of John J. Galbreath; that the lands are within the Blackfoot Indian Reservation and were originally allotted to Eliza Galbreath, a member of that tribe of Indians; that Eliza Galbreath died on

July 1, 1918; that her heirs were Lavina Chattin, the issue of William W. Samples, deceased, Annie LaPage and Jesse Samples, husband of plaintiff; that the issue of William W. Samples who died before the death of Eliza Galbreath, are Julia Samples, Stella Samples, Florence Samples and W. A. Samples; that all of the heirs of Eliza Galbreath were Indians; that all of the heirs of Eliza Galbreath about March 15, 1923, conveyed their rights for consideration to J. J. Galbreath, defendant's husband; that plaintiff was then the wife of Jesse Samples and joined in the conveyance; that about April 1, 1925, J. J. Galbreath conveyed the land to defendant Susie H. Galbreath who ever since has been and now is the owner; that the lands were allotted to Eliza Galbreath under a trust patent whereby the United States held them in trust for a period of 25 years; that during this period the lands were not taxable; that the lands were nevertheless assessed and taxes levied without the consent of the patentees and the assessments were wrongful and unlawful and were paid by plaintiff voluntarily and without right or authority.

The reply put in issue most of the material allegations of the cross complaint and pleaded that the cross complaint is barred by section 9015 and section 6011.5, R. C. M. 1935.

Except as to certain royalty interests in minerals and oil and gas and to a 1/16 interest held to belong to William A. Samples and to a 1/16 interest formerly belonging to Howard Hetzer and his sister Virginia Hetzer Didio, issue of Stella Samples, deceased, which they conveyed to plaintiff but which the court declined to adjudicate because neither Howard nor Virginia were served with process, the court found that plaintiff was and is the owner of the lands involved save and except that her daughters are part owners of the one-fourth interest held by Jesse Samples at the time of his death and which upon his death passed to plaintiff and her three daughters, Melba, Roma and Alma.

As to a one-half interest in the land, the court found plaintiff to be the owner by adverse possession, subject to a royalty interest in oil and gas.

As to a 1/16 interest, the court found that plaintiff acquired it by quitclaim deed from Florence Samples Hall on November 2, 1943.

As to another 1/16 interest, the court found plaintiff acquired it by warranty deed on September 30, 1944, from Julia Nelson, formerly Julia Samples. Judgment was entered accordingly.

Defendant Susie H. Galbreath has appealed from the judgment. She makes 40 assignments of error. The first 36 question the propriety of the court's findings. Many of them are of such a nature that even if erroneous they would not affect the outcome of the case. In general the complaint is that the court erred in finding for plaintiff and in not finding for defendant.

The record shows that the United States issued a trust patent covering the lands involved to Eliza Galbreath, a Blackfoot Indian, on February 28, 1918. Eliza Galbreath died on June 14, 1918. On April 4, 1923, the United States issued a fee simple patent to her heirs without naming any of them. The department of interior determined the heirs and the interest of each to be as follows: Annie LaPage and Lavina Hall Chattin, daughters, and Jesse Samples, a son, with each a one-fourth interest; and William Samples, a son, and Florence Samples, Stella Samples and Julia Samples, daughters of a prior deceased son of Eliza Galbreath, with a 1/16 interest in each.

Anna LaPage died before the fee simple patent issued, leaving as her heirs her husband Charles LaPage and her daughter Phoebe LaPage Swingley.

After the fee simple patent issued Stella Samples died, leaving as her heirs her children Howard Hetzer and Virginia Hetzer Didio. After the fee simple patent issued, Jesse Samples died, leaving as his heirs his wife, the plaintiff and three daughters, viz., Melba, Roma and Alma.

In 1921 the one-quarter interest of Lavina Chattin was conveyed to defendant Portland Cattle Loan Company. Because this transfer was made before the fee patent was issued, another conveyance to the same company was made in June 1923 of this same interest.

Likewise the one-quarter interest of Annie LaPage was by her heirs transferred to the Portland Cattle Loan Company after the issuance of the fee simple patent.

Also it appears that defendant and her husband J. J. Galbreath after the issuance of the fee simple patent in May 1923 executed a warranty deed covering the property to the Portland Cattle Loan Company. Defendant contends that the transfers to the Portland Cattle Loan Company were in trust for J. J. Galbreath but the court expressly found, and we think the finding was justified by the record, that the Galbreaths failed to establish that there was any trust or beneficial interest of any kind remaining in them after executing that deed.

After this action was commenced Lois Swingley Hanson, Florence Samples Hall and the heirs of Stella Samples, viz., Virginia Hetzer Didio and Howard Hetzer and Julia Samples Nelson conveyed their respective interests to plaintiff.

On March 14, 1941, which was about ten months after this action was commenced, S. M. Jasper and Hallie B. Jasper, his wife, of Chicago, Illinois, calling themselves "successors in interest to the Portland Cattle Loan Company, a dissolved corporation," executed a quitclaim deed to the property to defendant Susie H. Galbreath. But the record does not sustain the claim that the Jaspers had any interest in the property to convey. J. J. Galbreath during the pendency of the action filed a disclaimer of any interest in the property.

Hence so far as the record title was concerned at the time the case was tried, it rested in plaintiff and her children, the Portland Cattle Loan Company and William Samples, Jr. The latter two were named as defendants, were served with process and defaulted.

Defendant contends that plaintiff was a mere trespasser on the land, that she had joined in executing a deed covering the Jesse Samples one-quarter interest in the property to J. J. Galbreath in 1919. But the only proof offered to support this contention rested in parol. Defendant offered proof that such a deed was executed but was never recorded and could not be

found. Testimony also was introduced showing that a second deed was executed and that it too was lost. Plaintiff however flatly. denied the execution of either deed. The court having found against defendant on this issue and there being ample evidence in the record sustaining the court's finding, we are not at liberty to interfere with it.

Defendant next contends that the court's finding of title in ▉ plaintiff to the one-half interest standing of record in the name of the Portland Cattle Loan Company is not sustained by the evidence. She relies upon the general rule approved by this court that the possession of one cotenant is the possession of all and that acts done by a cotenant relating to or affecting the common property are presumed to have been done by him for the common benefit of himself and the other cotenants. Le Vasseur v. Roullman, 93 Mont. 552, 20 Pac. (2d) 250; Miller v. Murphy, 119 Mont. 393, 175 Pac. (2d) 182.

But though the general rule is as above stated, still as stated ▉ in the Le Vasseur case [93 Mont. 552, 20 Pac. (2d) 252], "one tenant in common·may oust his cotenant and make his possession adverse. But, as prima facie the possession of every cotenant is presumed to be by virtue of his title, and not in hostility to the rights of his cotenants, whoever asserts the remedy, to the granting of which the fact of ouster is a prerequisite, must first remove this prima facie presumption. * * * In order to sustain the claim that he has obtained title by adverse possession, the claimant must show that his cotenants had sufficient notice of his exclusive and hostile claim." Possession must be hostile and not permissive before title can be acquired by adverse possession, but possession which is at first permissive may become hostile by notice of a repudiation of the permissive possession. Price v. Western Life Ins. Co., 115 Mont. 509, 146 Pac. (2d) 165.

Hence the question before us is whether there was sufficient evidence in the record to warrant the court in finding adverse possession within the rules above stated.

The lands in question, consisting of 320 acres, are shown to be

chiefly valuable as a cattle ranch with water at all seasons of the year and with hay meadows and grazing. In 1918 it was equipped with buildings adequate for the needs of a family and sufficient to care for the cattle which the ranch would carry.

Upon the death of Eliza Galbreath in 1918, Jesse Samples, with his wife, the plaintiff here, and their children, moved on and took possession of the property and made it their home. They remained in actual possession and resided on the property continuously thereafter except that Jesse Samples died in 1933 and plaintiff has continued to reside upon the property ever since. Plaintiff has since been married to Clint Barcus who is now living with her on the property.

During their possession of the property plaintiff and her husband made improvements on the buildings, the lumber for which cost $1,200. In 1921 Jesse Samples added what fencing was necessary to the fences already there to completely enclose the property with a fence so as to keep out the cattle of J. J. Galbreath and those of other people. They continuously operated the ranch as their own. J. J. Galbreath cut the hay on the ranch in 1919 and 1921 but only upon agreement with plaintiff's husband. There was a custom office on the property when plaintiff moved on it but it was moved in 1923 and since then no one else but plaintiff and her husband have lived on the property except that employees of the Portland Cattle Loan Company rented a house thereon and occupied it in the winter of 1923-1924, for which plaintiff and her husband received $15 per month rent.

There is evidence that the Portland Cattle Loan Company wrote a letter to Mr. Samples in July 1924 claiming to own an undivided interest in the land and asked that arrangements be made for the division of the land and hay. Samples ignored this letter and demand and hence the Portland Cattle Loan Company had notice that Samples was making claim hostile to that of the company sufficient to start the running of the statute.

There was evidence given by the witness Chattin that Mr. Samples told Mr. Galbreath in 1931 "never to come back on his place again as long as Jesse Samples owned that land." Hence

so far as Galbreath was concerned, if the court found this statement to have been made, he too had notice of the adverse and hostile claim of Jesse Samples as early as 1931. Likewise for the years 1918 to 1921, J. J. Galbreath put up the hay on the land as well as on other lands of the plaintiff and her children. This was done by permission of Jesse Samples and in return he was paid for the hay. Mr. Galbreath has never claimed to own the property and has never requested plaintiff to quit possession of the property since 1933 or at any time prior thereto.

The evidence shows that plaintiff paid all of the taxes on the land from 1923 until the commencement of the action. Defendant contends that to meet the requirements of section 9024, R. C. M. 1935, relative to the payment of taxes, they must be paid each year as assessed and not after they become delinquent. This contention is without merit. Laas v. All Persons, 121 Mont. 43, 189 Pac. (2d) 670.

Defendant also contends that the lands were not taxable under the federal statutes which provide for the issuance of trust patents to Indians. We need not determine in this case whether the taxes were properly assessed. If they were properly assessed plaintiff has paid them. If they were not then plaintiff's right of adverse possession was good without the payment of any taxes. Section 9024 requires the payment of taxes only if there are any.

As to some of the facts recited above there was some conflict in the evidence. But under well settled principles in ascertaining whether the court erred in its findings, our only inquiry is, do they find support in the evidence viewed in the light most favorable to the prevailing party. In the record there is substantial evidence supporting the trial court's findings on the material issues and hence we must sustain those findings.

Appellant claims title by virtue of the deed from S. M. Jasper and wife. The difficulty here arises from the fact that there is nothing in the record to show that Jasper or his wife had any interest in the property which they could convey. The deed was given in 1941 after the action was commenced and long after the

dissolution of the Portland Cattle Loan Company. The record shows too that neither Jasper nor his wife was a director of the corporation at the time of its dissolution and the evidence does not show that they ever were directors or trustees of the dissolved corporation. Appellant contends that the corporation and its directors were not material or necessary parties to the action and that her motion to dismiss them as defendants should have been sustained. We fail to see how an adverse ruling on this motion could have affected appellant in the least since the court was warranted under the evidence in finding that she has no interest in the property in any event.

The corporation, if undissolved, or the directors as trustees after dissolution are the only ones who could question the necessity of making them parties and they have taken no appeal.

Appellant contends that plaintiff is not permitted to establish adverse possession for the statutory period by combining the time when her husband had possession with that when she held possession after her husband's death. But, ''Where a family has lived in continuous adverse possession of land, the title being in one of them or in different members of the family at different times, they stand in such privity one to another that the tacking of their possessions is permissible. Moreover, where the possession of the adverse claimant constitutes a continuation of the occupation by other members of his family, the character of claimant's possession must be determined with reference to the circumstances under which the family's occupancy began and continued.

''*Parent and child.* Where a parent and child occupy land successively for the full statutory period in a manner consistent with all of the elements necessary to acquire title by adverse possession, their possessions may be joined together to give title to the last occupant by adverse possession.'' 2 C. J. S., Adverse Possession, sec. 130(e), pages 690, 691. And see 1 Am. Jur., Adverse Possession, sec. 153, p. 880.

And that rule permits the wife to tack her possession on to that of her husband prior to his death. Tippenhauer v. Tippen-

546

hauer, 158 Ky. 639, 166 S. W. 225; Culton v. Simpson, 265 Ky. 343, 96 S. W. (2d) 856; Howard v. Mitchell, 268 Ky. 429, 105 S. W. (2d) 128; Souleyette v. McKee, 296 Ky. 868, 178 S. W. (2d) 833; LeBleu v. Hanszen, 206 La. 53, 18 So. (2d) 650; Lewis v. Smith, 187 Okl. 404, 103 Pac. (2d) 512; Wells v. Coursey, 197 S. C. 483, 15 S. E. (2d) 752; Lundquist v. Eisenmann, 87 Colo. 584, 290 Pac. 277; City of St. Louis v. Gorman, 29 Mo. 593, 77 Am. Dec. 586. Nor is it necessary as contended by appellant that the relationship of husband and wife be established by probate proceedings before this can be done where, as here, the relationship is admitted by the pleadings.

One other point must be considered. The record shows that Jesse Samples on March 1, 1922, wrote a letter to the commissioner of Indian affairs, Washington, D. C., in which he urged consideration of a claim for $3,150 against the estate of Eliza Galbreath, alleged to have arisen from the fact that he had been appointed and served as caretaker for the property in question. It is contended by appellant that this letter shows conclusively that he was not holding adversely but as caretaker. The most that this letter shows is that the possession of Jesse Samples was permissive at its inception. As above noted there was sufficient evidence to sustain the finding that the possession thereafter and after the issuance of the fee simple patent in 1923 became hostile and adverse.

Finding no merit in any of the contentions of appellant the judgment is affirmed.

Mr. Chief Justice Adair, and Associate Justices Freebourn, Metcalf and Bottomly, concur.

Rehearing denied July 14, 1949.