HELLAND, RESPONDENT, *v.* CUSTER COUNTY, ET AL., APPELLANTS.

No. 9146.

Submitted March 23, 1953. Decided May 7, 1953.

256 Pac. (2d) 1085.

Mr. Hugh J. Lemire, Miles City, for appellant.
Messrs. Farr, Colgrove & Farr, Miles City, for respondent.
Mr. Lemire and Mr. Colgrove argued orally.

MR. CHIEF JUSTICE ADAIR:

This is a suit commenced July 22, 1950, by Roy E. Helland as plaintiff, to quiet title to certain lands in the abandoned channel or bed of Tongue river, situate in the southerly portion of the S ½ of section 34, in township 8 north, range 47 east of the Montana Meridian in Custer county, Montana.

The only defendants named in the complaint filed were Custer county and the city of Miles City. Later, however, Iva M. Hartman was allowed to file a complaint in intervention wherein she claimed an interest in the lands described in plaintiff's complaint.

The plaintiff and the city filed separate answers to the complaint in intervention denying that the intervener Iva M. Hartman had or has any interest in said lands.

The county filed no answer to plaintiff's complaint or to the complaint in intervention and suffered its default to be taken and entered. Thereupon, issue having been joined, the cause was tried to the court sitting without a jury, findings of fact and conclusions of law were made and filed and decree in favor of the plaintiff was entered. From such decree the intervener Iva M. Hartman alone has appealed.

In 1882 United States patent issued to George M. Miles, patentee, for 146.89 acres of land described as the W ½ NW ¼, NW ¼ SW¼ and Lot 2 of section 34, in township 8 north of range 47 east of the Montana Meridian in Custer county, Montana Territory.

The same year that patent issued, George M. Miles and wife conveyed 66.89 acres of the aforesaid lands to Wells S. Dickinson, the lands so granted being described as the NW ¼ SW ¼ and Lot 2 of said section 34.

In March 1884, Wells S. Dickinson and wife conveyed the aforesaid 66.89 acres to Simon Snyder, trustee. At and prior to this time and for many years thereafter the Tongue river, alleged to be a non-navigable stream, flowed diagonally in a slightly north of westerly direction across and through the southerly portion of the lands so granted to Snyder.

Following the conveyance to him from Dickinson and wife, Snyder caused that portion of the lands lying to the north of the channel or bed of the Tongue river to be surveyed and platted into blocks, town lots, streets and alleys and thereafter on May 5, 1884, he filed in the office of the county clerk of Custer county a properly authenticated plat made from such survey thereby creating and establishing the Snyder Addition to Miles City, such addition lying and being wholly to the north of the north meander line of the channel of Tongue river.

Between the years 1909 and 1913 the waters flowing in the Tongue river were artificially diverted and the course of the river changed so that since such time the waters of the river have not flowed in said old channel or bed nor across or through any portion of the above described 66.89-acre tract so conveyed to Snyder and such former river channel or bed became, was and is dry.

In 1936, one Frank Kuni, upon being requested by the city officials to take his dairy and cows outside the city limits, moved same to the old abandoned river channel so located to the south of and beyond the south boundary and limits of the Snyder Addition. The portion of the old river channel so selected by

Kuni was a strip of land about 410 feet long and 250 feet in width situate in the unplatted southerly portion of the NW ¼ SW ¼ and Lot 2 of section 34, in township 8 north of range 47 east of the Montana Meridian.

In 1936, upon moving upon the land, Kuni built and enclosed it with a good substantial four-wire fence, moved a barn and other buildings thereon and there operated his dairy,—kept his cows,—lived and claimed the property continuously from the year 1936 until the spring of 1949, at which time he sold and transferred all such lands and the improvements thereon to the plaintiff Roy E. Helland. At no time did any one including the city and its officials ever tell Kuni that he could not move upon or occupy the old river channel and he testified that at all times during the years he lived upon it he claimed the land and figured that he owned it. Thus did Kuni hoist his flag on the abandoned river channel and hold and occupy same to the exclusion of all other persons for some thirteen years under continuous adverse possession and claim of ownership disputed by none.

During the time that he lived thereon, Kuni paid no taxes on such land by reason of the fact that the officials in the county treasurer's office had advised him that there was no assessment on the land. However, Kuni at all times was assessed with and he paid the taxes on the improvements which he had placed upon the land and he testified that he would have paid the taxes on the land but for the fact that no taxes were assessed on such land during the entire time that he possessed and lived upon it.

On April 13, 1949, by deed bearing that date, Kuni conveyed the lands and property to the plaintiff Helland and thereafter Helland returned an assessment thereon and paid the taxes on both the land and the improvements for the years 1949 and 1950 and he further offered to pay all taxes, if any there were, that had been assessed on the property prior to the time it was conveyed to him but was advised by the tax collecting officials that such lands had not theretofore been assessed.

It further appears that on March 7, 1951, Helland paid taxes on the land for the ten-year period commencing with the year 1939 through the year 1948 and the county treasurer's receipt for such payment was received in evidence over intervener's objections.

*"According to the plat and survey."* By warranty deed dated May 3, 1943, Florence J. Durfee, the then owner, conveyed unto the intervener, Iva M. Hartman, grantee, "the hereinafter described real estate situated in the city or town of Miles City, County of Custer, and State of Montana, to-wit:

"Lots 6, 7, 8, 9, 10, 11 and 12 in Block 24 of Snyder Addition to the City of Miles City, Custer County, Montana, *according to the plat and survey thereof now on file and of record* in the office of the County Clerk and Recorder in and for the County of Custer, State of Montana." Emphasis supplied.

The intervener purchased and acquired her seven specifically numbered city lots in Block 24 "according to the plat and survey thereof" and not otherwise.

"Where lands are so granted, the plat itself with all of its notes, lines, descriptions and landmarks becomes a part of it." Pittsmont Copper Co. v. Vanina, 71 Mont. 44, 227 Pac. 46, 48. Also see Vaught v. McClymond, 116 Mont. 542, 155 Pac. (2d) 612; City of Billings v. Pierce Packing Co., 117 Mont. 255, 161 Pac. (2d) 636; Ming v. Foote, 9 Mont. 201 at page 222, 23 Pac. 515.

According to the plat and survey Block 24 of the Snyder Addition comprises twenty separately numbered city lots Nos. 1 to 20, inclusive. Each lot is 120 feet in length extending easterly—westerly. The plat shows five parallel avenues extending northerly—southerly each 80 feet in width. Eight parallel streets are shown extending easterly—westerly each 68 feet in width.

Block 24 is bounded on the north by Butler Street, on the south by Tompy Street, on the west by Montana Avenue and on the east by Prairie Avenue. A north-south alley 10 feet in width and paralleling Montana and Prairie Avenues halves Block 24

and intersects at right angles, Butler Street on the north and Tompy Street on the south.

Lots Nos. 1 to 10 inclusive, numbered from north to south are to the west of the alley and Lots Nos. 11 to 20 inclusive numbered from south to north are east of the alley. The south line of Butler Street is the north line of Lots Nos. 1 and 20 while the north line of Tompy Street is the south line of Lots Nos. 10 and 11. The width of Lots Nos. 1 and 20 bordering on Butler Street and Lots Nos. 10 and 11 bordering on Tompy Street is 30 feet each, while each of the remaining sixteen lots being Lots 2 to 9 and 12 to 19 is but 25 feet in width.

The deed by which the intervener acquired her seven city lots makes no mention whatever of any land located south of Tompy Street or lying without or beyond the platted and surveyed boundaries of Block 24 of the Snyder Addition.

The intervener's dwelling is located on Lots Nos. 11 and 12 of Block 24, both lots lying to the east of the alley, to the north of Tompy Street and facing east on Prairie Avenue, the home being designated as No. 919 South Prairie Avenue.

At the trial the intervener, in part, testified:

"Q. Mrs. Hartman, on which lot are your improvements located? A. Well, they are at 919 South Prairie. The house is on the two lots and I own five lots across the alley. * * *

"Q. You own more than the two lots 11 and 12? A. I own the two lots the house sets on and five lots across the alley, right in back of where the house is.

"Q. What are the improvements that you have there, what improvements have you there on the land? A. On my lots across the alley from where the house is?

"Q. On these lots that you own, what improvements do you have? A. My chicken buildings besides the two lots where there is a house.

"Q. What two lots—which lots do you refer to? A. That is where the house is.

"Q. What lots would those be? Would they be the lots facing on Prairie Avenue? A. Yes.

"Q. That would include lot 11 then? A. 10 and 11.

"Q. Where your home is would be on part of lot 11? A. The house sets on two lots.

"Q. What do you mean by two lots? A. There are two lots where the house sets and five across the alley.

"Q. It would be lots 11 and 12? A. 11 and 12, yes.

"Q. You say your improvements face Prairie Avenue? A. Yes.

"Q. And they are north of Tompy Street? A. Tompy Street, and then these lots across the alley from where my house is, there are five lots there that I own.

"Q. That would be 6, 7, 8, 9 and 10? A. Yes.

"Q. All of your improvements are north of Tompy Street? A. Yes."

In the event Tompy Street should be abandoned then, should there be no evidence to the contrary, the intervener could invoke the presumption provided by R. C. M. 1947, sec. 67-713, namely, that, "An owner of land bounded by a road or street is presumed to own to the center thereof, but the contrary may be shown."

The record before us shows the presence of a narrow strip of land between the south line of Tompy Street and the north meandered bank of the Tongue river. This strip of land was never numbered, designated nor described on the official plat of the Snyder Addition and the record fails to show that Snyder made any conveyance or transfer of any part of such strip.

In her complaint in intervention the intervener pleads that, ▮▮▮▮ subject to easement for right-of-way of the city, she "has been and now is the owner and entitled to the immediate possession" of certain described lands in the channel of the Tongue river being a portion of the lands claimed by plaintiff and described in his complaint. The burden of proof was on the intervener to establish her aforesaid claims. The law prescribes that she must succeed on the strength of her own title and not on the weakness of her adversary's. McAlpin v. Smith, 123 Mont. 391, 394, 213 Pac. (2d) 602.

The only evidence introduced by the intervener consists of earlier deeds to her predecessors in interest transferring the lots which she now owns in Block 24 and tax receipts showing that she had paid taxes on Lots 10 and 11 in Block 24.

The intervener wholly failed to make out a case that entitled her to any relief or that shows that she has any right, title or interest in the lands described in Kuni's deed to the plaintiff Helland and claimed by the latter in this suit.

The intentional artificial change made in the old channel of the Tongue river left the channel so abandoned still between the north and south bank of the river exactly as such banks were existing and located prior to such change and it did not create any land in the river's channel either by accretion or reliction as was contended for by intervener. See Hammond v. Shepard, 186 Ill. 235, 57 N. E. 867, 78 Am. St. Rep. 274; State v. Longyear Holding Co., 224 Minn. 451, 29 N. W. (2d) 657, 667; 65 C. J. S., Navigable Waters, sec. 81, a and b, p. 172.

It stands undisputed that plaintiff's immediate predecessor in interest Kuni hoisted his flag on the abandoned river channel in the year 1936 by moving upon the land, taking possession thereof,—enclosing same in a substantial fence,—residing upon the land and holding and possessing it exclusively, openly, notoriously and adversely to any and all persons and the entire world continuously for some thirteen years.

The intervener may not indulge in a game of "leap frog" or "hop, skip and jump" with her title which covers only seven surveyed and platted city lots lying wholly within the exterior boundaries of Block 24. Intervener's real property all lies to the north of Tompy Street and she may not leap therefrom over and across Tompy Street, over and across the narrow strip of land lying to the south of Tompy Street and between said street and the land so adversely claimed by Kuni and plaintiff and then effect a three point landing in Kuni's cow corral located in the abandoned river channel.

The intervener is in no position to urge that Kuni's failure to pay the taxes on the land so held and claimed by him

defeats plaintiff's claim of title by adverse possession. As before stated Kuni paid the taxes on his improvements on the land; he inquired about the taxes on the abandoned river channel and was told by the county treasurer that none had been assessed and he stood ready, able and willing to pay all taxes assessed, levied or demanded.

In Barcus v. Galbreath, 122 Mont. 537, 544, 207 Pac. (2d) 559, 564, this court said: "We need not determine in this case whether the taxes were properly assessed. If they were properly assessed plaintiff has paid them. If they were not then plaintiff's right of adverse possession was good without the payment of any taxes. Section 9024 [Rev. Codes 1935, now R. C. M. 1947, sec. 93-2513] requires the payment of taxes *only if there are any.*" Emphasis supplied.

In Heilbron v. Last Chance Water Ditch Co., 75 Cal. 117, 17 Pac. 65, 68, the court said: "The point that respondents are not found to 'have paid all the taxes, state, county, or municipal, which have been levied and assessed upon said land,' (section 325, subsec. 2, Code Civil Proc.,) *is sufficiently answered* by the fact that it does not appear that any taxes were ever levied or assessed upon the ditch and water-right in question to defendant, or to any person or persons, known or unknown." Emphasis supplied. The above case is cited and followed on this point in Oneto v. Restano, 78 Cal. 374, 379, 20 Pac. 743, 746, where the court, after citing the Heilbron Case, said: "In other words, the requirement as to payment of taxes does not apply where none have been assessed to anybody." See also Ortiz v. Pacific States Properties, 96 Cal. App. (2d) 34, 215 Pac. (2d) 514, 517; Stickel v. Carter, 63 Idaho 78, 117 Pac. (2d) 477, 479; 2 C. J. S., Adverse Possession, sec. 171b, p. 746.

The trial court found the facts in favor of the plaintiff and that the intervener only owned said Lots 10 and 11 in Block 24 of the Snyder Addition and an interest in the north half of Tompy Street which adjoins such lots; that no taxes had been levied or assessed against the land described in the complaint but that ever since 1936 up to the present time Frank Kuni and

his successor in interest, the plaintiff, have offered to pay all taxes which should or may have been levied or assessed upon the land involved; that on March 7, 1951, the plaintiff voluntarily paid $34.20 to cover an estimated tax on said tract of land from the year 1939 to 1948, inclusive; that Frank Kuni entered into the actual possession of the land here involved in the year 1936, claiming it as his own and he and his successor in interest, the plaintiff herein, ever since 1936 have continuously been in open, notorious and actual exclusive possession and occupancy of the land described in plaintiff's complaint; that each and all the allegations contained in plaintiff's complaint are true and correct.

The record shows that all such findings of fact are based upon substantial evidence. The court found that by virtue of such facts the plaintiff is the sole owner in fee simple in and to the land described in his complaint and rendered decree for plaintiff in conformity with such findings and conclusions. Finding no merit in any of intervener's specifications of error the decree is affirmed.

ASSOCIATE JUSTICES BOTTOMLY, FREEBOURN, ANGSTMAN and ANDERSON, concur.