520 P.2d 1181

**RIVER FARMS, INC., a corporation, Appellant,**

**v.**

**Guy B. FOUNTAIN et al., Appellees.[1]**

**No. I CA–CIV 2009.**

Court of Appeals of Arizona, Division 1, Department A.

April 11, 1974.

Rehearing Denied June 14, 1974.

Review Denied July 9, 1974.

1. To name all of the appellees in the caption of this opinion would unduly lengthen it. To the end that all parties are set forth, we have listed them as a appendix at the end of this opinion by number and by name as they appear in the judgment entered by the trial court.

Shimmel, Hill & Bishop, P.C. by Rouland W. Hill, Phoenix, and Woolway, Paul & Magnus by Donald D. Paul, Los Angeles, Cal., for appellant.

Lewis & Roca by John P. Frank, Phoenix, and Leek & Oehler by Terrence S. Leek, Bullhead City, for appellees.

## OPINION

STEVENS, Judge.

The case involves claims and counter-claims in ejectment and to quiet title to Colorado River property to which the opposing parties held conflicting Arizona and California deeds.

The following is a sketch of the land in question.

1883 California (west bank) meander line

Appellees' Fee Land

East bank of Colorado River today

INTERLAND

9  10

Appellant's Fee Land

1905 east bank meander line

---

Rivers Farms, Inc., plaintiffs in the trial court (hereinafter "appellants") claim a fee interest in a portion of Section 9, Township 17 North, Range 22 West, Gila and Salt River Baseline and Meridian. Specifically they claim that portion which lies east of the east meander line of the Colorado River, as such line was established by the Government Land Office survey of 1905. Appellant claims through a deed duly recorded in Mohave County, Arizona from the Cotton Land Company which traced its claim of title back to original patent. The land so claimed shall hereinafter be referred to as "the appellant's fee land."

The parties defendant (hereinafter "appellees") claim fee interests in portions of Sections 18, 19, 13 and 14, Township 9 North, Range 23 East, San Bernardino Baseline and Meridian. The portions claimed are these areas which lie west of the west meander line as established by the Government Land Office survey of 1883.

All appellees hold deeds duly recorded in San Bernardino County, California. This land shall hereinafter be described as "the appellees' fee land."

The appellant, the appellees and the State of Arizona (not a party to this appeal) claim all or portions of the land between the meander lines as accretions to their fee land. This land between the meander lines shall hereinafter be termed the "interland."

In 1958 the appellant obtained title to appellant's fee land by warranty deed from Cotton Land Company. Appellant also received a quitclaim deed for the lands which had purportedly accreted to the fee lands. The land had been cleared and cultivated by appellant's predecessors, beginning sometime in 1952. Appellant's fee land, the interland, and even appellees' fee land to within 900 feet of the Colorado River were cultivated by appellant. Irrigation problems forced the appellant to discontinue farming in one area and to use another

portion for grazing. Appellant's operations in appellees' fee land were largely discontinued by 1961.

In 1961, at the direction of Calnevari Corporation, appellees' predecessor in interest, one Gott erected a fence along the 1883 west meander line. The fence has been in position continuously since 4 January 1962, posted with notices forbidding trespass. Appellant made no use of the land after its discovery of the fence, and its agents and government surveyors were in fact refused permission to enter the property, a fact of which appellant's officers were advised.

Between 4 January 1962, the date of the fence's completion, and 27 March 1967, the date of the filing of this suit, the appellees have put their respective parcels west of the fence to their own uses. Appellant paid taxes to Mohave County, Arizona, throughout this five-year period on its fee land and the land allegedly accreted to the fee land. Appellees paid taxes on land described in their deeds to San Bernardino County, California, for the entire five-year period. Appellant brought suit against appellee Gott for trespass in 1961, and the suit was dismissed without prejudice in 1966. Appellees' predecessor in interest sued appellant in 1961 to quiet title in itself, and that suit was dismissed in 1966 without prejudice.

On 27 March 1967 this suit was filed, and after extensive pretrial proceedings, trial was had, commencing 8 October 1970. After a lengthy trial, the court issued findings of fact and conclusions of law. The appellant was awarded the area denominated "appellant's fee land" based on its good title coupled with continuous possession and use. Additionally, the appellant was awarded the area denominated as "the interland" based on a theory of adverse possession. The State of Arizona was awarded a strip of land between the 1952 bank of the Colorado and its present bank, which was uncovered by the channelization by the Bureau of Reclamation. The appellees were awarded the "appellees' fee land." Appellant seeks to overturn that portion of the judgment which awarded lands to the appellees.

■ The appellant first complains because the trial court did not make findings of fact and conclusions of law regarding shifts in the course of the Colorado River at specific places and times during the past ninety years, and the causes of those shifts. Both the appellant and the appellees produced a great deal of sophisticated evidence regarding this issue. However, the trial court was able to resolve the legal issues raised in the pleadings without reference to this body of evidence. Any determination regarding the vicissitudes of the river or their legal implications would be *obiter dicta*, since it is not needed for the resolution of the issues. Appellant claims such findings and conclusions would alter the result, but does not specify in what way.

Although no specific adverse possession statute is mentioned in the conclusions of law we find the most applicable statute to be A.R.S. § 12–525:

"§ 12–525. Real property in adverse possession and use under duly recorded deed with possessor paying taxes; five year limitation; exception

"A. An action to recover real property from a person in peaceable and adverse possession, and cultivating, using or enjoying the property, and paying taxes thereon, and claiming under a deed or deeds duly recorded, shall be commenced within five years after the cause of action accrues, and not afterward.

"B. This section shall not apply to anyone in possession of land, who in the absence of this section would claim title through a forged deed, and no one claiming under a forged deed or a deed executed under a forged power of attorney shall be allowed the benefits of this section."

■■ Appellant first contends that the appellees have no duly recorded deeds, within the meaning of this statute, since

appellees did not record their California deeds in Arizona until after the filing of this action. The evidence showed that the appellees' deeds were duly recorded in San Bernardino County, California, during the five years they occupied the land described in the deeds. The purpose of requiring a duly recorded deed is to define the boundaries of the land claimed and to give notice to the true owner of the adverse claim. Davis v. Howe, 213 S.W. 609 (Texas 1919); Thomas v. Southwestern Settlement Land Development Company, 131 S.W.2d 31 (Tex.Civ.App.1939.) The recording of deeds in another jurisdiction may fulfill the first purpose, but is usually not of much assistance as to the second. Normally a deed must be filed in the county in which the land is located to qualify as a duly recorded deed under this statute. [See Slaughter v. Hight, 239 S.W. 1018 (Tex.Civ.App.1922), for an interpretation of Art. 5509, Vernon's Ann.Texas Civil Statutes, from which A.R.S. § 12–525 was taken.] However, we believe that the Arizona-California Boundary Compact has modified the rule as it applies to lands adjoining the Colorado River, where the jurisdictional line has always been difficult to ascertain.

The Purpose Clause of the Compact recites a problem existing in that area:

"Article I. Purpose.

"The boundary between the State of Arizona and California on the Colorado River has become indefinite and uncertain because of meanderings in the main channel of the Colorado River with the result that a state of confusion exists as to the true and correct location of the boundary, and the enforcement and administration of the laws of the two states and of the United States have been rendered difficult."

The purpose of the Compact was to establish permanent boundaries between jurisdictions. This remedied future jurisdictional problems but left unanswered the confusion recited in the Purpose Clause. In an attempt to clarify and regularize real estate titles in the area, the Arizona Legislature, in ratifying the Compact with the State of California, enacted § 6 of the Laws 1963, Chapter 77:

"Sec. 6. Recordation of documents

" * * * As to lands theretofore considered a part of the state of California, which, under the terms of the compact, are within the boundaries of the state of Arizona, from and after the date of such recording, certified copies of patents, deeds, and other instruments affecting the title to the lands which shall have been recorded in the office of the county recorder of the county of California in which the lands were so considered to be located shall be accepted and recorded by the county recorder of the county in Arizona in which the lands are located under the terms of the compact, without charge therefor. Recordings made under the provisions of this section shall have retroactive effect as constructive notice to the date of their original recording in the state of California."

Appellant contends that only those holding deeds to land which was inside California immediately prior to the Compact, and which was ceded to Arizona by the Compact, should be able to file their deeds in Arizona with retroactivity to the date of their California filing, and that because the appellees' fee lands were at all times during the five years of possession within the State of Arizona, the appellees may not avail themselves of the retroactive filing permitted under § 6. It appears from the statute itself that significant confusion existed regarding jurisdictional boundaries.

In view of the confused condition of the boundaries of the past ninety years, we find this interpretation unduly restrictive. A more reasonable construction of this section would be to allow anyone holding recorded California deeds to land ceded to Arizona by the Compact to file them in Arizona to be effective as of the date of the California recording. We hold that the recording of a deed bearing a description of land in terms of California

townships and ranges, referenced to a California baseline and meridian, entitles one to have his land "considered" part of California within the meaning of § 6. Indeed, in 1883 it was clearly located and "considered" part of California. The intent of § 6 is to relieve property owners from the burden of following the frequent jurisdictional changes which occurred in the course of the river and adjusting the filing place of their recorded deeds accordingly. It places them where they would have been, had there been no state jurisdictional boundary involved. As a result of the statute, recordings of deeds would not be rendered invalid by the frequent fluctuations of the river. In view of the enactment of § 6, we believe the intent of the statute is that ownership of property may change by virtue of changes in the boundaries of the property, but not by virtue of changes in the jurisdictional boundaries.

Appellant contends that allowing a retroactive filing prejudices title to its land in violation of § 5 of Laws 1963, Chapter 77.

"Sec. 5. Preservation of rights

"Nothing contained in the provisions of this act, or any operation thereof, shall prejudice the titles, rights or claims of any person, public or private, natural or artificial, to any of the lands herein involved, whether such titles, rights or claims arise or exist upon the basis that the lands affected by the designation of boundary as set forth in the compact and in this act were previously a part of the state of Arizona and have now become a part of the state of California, or were previously a part of the state of California and have now become a part of the state of Arizona, or otherwise; and no person shall be prejudiced in the water rights which he now has by reason of anything contained in this act."

We understand this section to mean that no interpretation of the Compact can be made which would, in and of itself, deprive anyone of title to land. Our interpretation of § 6 makes no determination of the relative merits of any of the titles involved. No one is awarded or denied title by our interpretation of § 6. We merely state that great liberality should be allowed in filing of titles which have been clouded by the shifting of the Colorado River over the years.

■ Once an Arizona recording is allowed under the terms of § 6, for the purposes of A.R.S. § 12–525, no evidence of collateral defects in the California deeds may be considered, short of showing the voidness of the deeds on their face. Work v. United Globe Mines, 12 Ariz. 339, 100 P. 813 (1909).

■ The next question raised by the appellant is that the taxes were not properly paid under the provisions of A.R.S. § 12–525. It appears clear to us that records of tax payments necessarily underlie the claims of the defendants to the land they are claiming under A.R.S. § 12–525. As such, they are included within the class of documents mentioned in § 6 of Laws 1963, Chapter 77, 41–522 as being entitled to be filed in Arizona, that is, "patents, deeds, and other instruments affecting the title." As mentioned above, such a filing is retroactive and has the effect of constructive notice as of the date of its California filing.

■ Even if the record of tax payment is not included within § 6, we feel that the paying of taxes in California substantially complies with the requirement of A.R.S. § 12–525.

The payment of taxes as an element of adverse possession is common. See 37 California Law Review 477 for a tabulated comparison. A reading of the statutes and cases interpreting them discloses three distinguishable rationales supporting them. One is a "policing theory", which holds that the statute is for the purpose of encouraging the payment of taxes. Another is the "good faith" theory, which views the payment of taxes as a demonstration of honest belief on the part of one claiming under a deed in the strength of his title. Such a position was taken in United States v. Schwalby, 87 Tex. 604, 30 S.W. 435

**510**

(1895), which held that the title to property on which no tax had been assessed could still be obtained by adverse possession under the Texas statute, since tax payment was merely one of the indicia of ownership and confidence of the validity of the title. See Wichita Valley Rwy. Co. v. Somerville, 179 S.W. 671 (Tex.Civ.App.1915) (dicta). Arizona gives great weight to the interpretation of the Texas statute, since it is the source of its own. Goldman v. Sotelo, 8 Ariz. 85, 92, 68 P. 558 (1902).

A third theory is that the tax payment requirement has as its function the further notice of the title owner that a claim hostile to his own is being established. Many authorities dispute the validity of this rationale, favoring the "good faith" theory stated above. See 132 A.L.R. 216, 218–19 (1941); "Payment of Taxes as a Condition of Title by Adverse Possession" 9 Santa Clara Law Review 244 (1969); See also Comment, 11 Stanford Law Review 720 (1950); Comment, 22 California Law Review 111, 112 (1933). Under a statute similar to Arizona's, Montana has allowed the payment of all the taxes in question at any time during the adverse possession, thereby greatly diminishing the possibility of notice. Barcus v. Galbreath, 122 Mont. 537, 207 P.2d 559 (1949). California has held that reimbursement for taxes by the adverse possessor to the landowner satisfies the requirement of payment for taxes under a similar statute. Williams v. Stillwell, 217 Cal. 487, 19 P.2d 773 (1933). Utah follows a similar rule. Cooper v. Carter Oil Co., 7 Utah 2d 9, 316 P.2d 320, 322 (1957). The Nevada Supreme Court notes:

> "If [it is] the purpose of giving notice to the true owner that, perchance, an adverse claimant has appeared upon the scene, his payment of taxes as notice of that fact is entirely insignificant when compared to the circumstance of his open and notorious possession of the land. Zubieta v. Tarner, 76 Nev. 243, 351 P.2d 982, 984 (1960).

We agree with authorities finding the payment of taxes in conjunction with adverse possession to be required primarily as a demonstration of the good faith belief by the adverse possessor in strength of his title rather than notice to the owner of an adverse claim.

Finally, appellant contends that suits filed during the occupation of the land by the appellees tolled the running of the five-year statute of limitations. The record clearly shows that none of these actions were prosecuted to judgment. The rule in such instances is that the time elapsed during the pendency of suits which are not prosecuted to final judgment is included in computing the period during which the land is adversely possessed. Poole v. Goode, 442 S.W.2d 810, 813 (Tex.Civ.App.1969); Gibbs v. Lester, 41 S.W.2d 28 (Tex.Civ.App.1931); Yorba v. Anaheim Union Water Company, 41 Cal.2d 265, 259 P.2d 2 (1953); 3 Am.Jur.2d Adverse Possession, § 92, p. 174.

Affirmed.

DONOFRIO, P. J., and OGG, J., concur.

APPENDIX

We here list the appellees by number and by name as they appear in the judgment entered by the trial court.

1. Calnevari Corporation
2. Ruby R. Gaut
3. Ruby R. Gaut, a widow, and Donald A. Lewis and Margaret M. Lewis
4. Ruby R. Gaut
5. Catherine L. Sneed
6. Geraldine Whittlesey and Ralph A. Whittlesey
7. Donald A. and Margaret M. Lewis
8. Donald A. and Margaret M. Lewis
9. Doyle Stemen and Marietta Stemen
10. Henry L. Smith and Georgia M. Smith
11. Irma A. Smith and Genevieve Smith

12. Ruth F. McClure

13. Walter G. Briggs and Virginia B. Briggs

14. John D. Vanderslice and Nancy C. Vanderslice

15. George W. Harrison and Charlotte Harrison

16. Donald W. Burson and Hermoine Fae Burson

17. Erma Anne Martin Clark

18. Lawrence A. Andrews and Helen Andrews

19. William B. Tittle

20. Robert E. Sinnett and Theresa Sinnett

21. Lena Sullivan and Michael M. Sullivan, Jr.

22. Lena Sullivan and Theresa C. Sullivan Smith

23. Guy B. Fountain and Thelma R. Fountain

24. David R. Kerns and Lois L. Kerns

25. Jack T. Monroe and Gloria A. Monroe

26. Grant A. Lewis

27. Kenneth R. Lucas, Kenneth C. Wetmore and Marguerite L. Wetmore

28. William Claypool III, and his wife, Juanita Inez

29. Thomas G. Harward and Doris J. Bowser

30. Donald S. Johnson and Shirley Joan Johnson

31. Jack M. Hunter

32. Bess W. Brewer, a widow

33. Robert Chesney, Jr.

34. Joe and Margaret A. McIntyre

35. James N. and Marie C. McIntyre

36. Donald G. Beack [sic] and Helen K. Beck

37. Alan L. Boyle and Dorothy M. Boyle

38. Mike H. Puentes and Hazel M. Puentes

39. Georgia Lynn Farmer, Gertrude N. Scott and Ethel Farmer

40. Louis Mattis and Minnie Mattis